UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

      - v -                              :            **NOTICE OF MOTION**

**CLARENCE DEAN**                           :            **08 CR. 067 (BSJ)**

          Defendant.          :

- - - - - - - - - - - - - - - - - x

**PLEASE TAKE NOTICE**, that upon the annexed affirmation of **JENNIFER L. BROWN, ESQ.**, the defendant herein, **CLARENCE DEAN**, will move before the **HONORABLE BARBARA S. JONES**, United States District Judge for the Southern District of New York, at the United States Courthouse located at 500 Pearl Street, New York, New York, on June 10, 2008, for an Order, pursuant to Rule 12 of the Federal Rules of Criminal Procedure, and the United States Constitution, Article I § 8, cl. 3; Article I §§ 1, 7, 9; the Fifth Amendment; and the Tenth Amendment, dismissing the indictment and granting such other relief as the Court may deem just and proper.

Dated:   New York, New York
        June 10, 2008

                            Respectfully submitted,
                            LEONARD F. JOY, ESQ.
                            Federal Defenders of New York

        By:   _____
                            **JENNIFER BROWN, ESQ.**
                            Attorney for Defendant
                            **CLARENCE DEAN**
                            52 Duane Street - 10th Floor
                            New York, New York 10007

TO:  MICHAEL J. GARCIA, ESQ.
      United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, New York 10007
      Attn:    **Mark Lanpher, ESQ.**
             Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------X
UNITED STATES OF AMERICA        :

        - v -                   :

**CLARENCE DEAN**                  :

            Defendant.    :
-----------------------------X

                                        **AFFIRMATION**

                                    **07 Cr. 067 (BSJ)**

    I, Jennifer L. Brown, hereby affirm under penalties of
perjury, pursuant to 28 U.S.C. § 1746, as follows:

    1. I am an assistant Federal Defender with the Federal
Defenders of New York and was previously assigned to represent
defendant Clarence Dean in this case.

    2. I make this declaration in support of Clarence Dean's
motion to dismiss the indictment.

    3. All statements herein are made upon information and
belief unless otherwise indicated.

    4. I have reviewed documents and records provided by the
Government and conducted independent investigation into the facts
and circumstances surrounding this case.

    5. Clarence Dean is charged in the instant indictment with
one count of traveling in interstate commerce and knowingly
failing to register and update a registration as required by the
Sex Offender Registration and Notification Act ("SORNA"), in
violation of 18 U.S.C. § 2250.

    6. For the reasons set forth in the accompanying memorandum
of law, the indictment should be dismissed because the statute

violates the United State the Commerce Clause, Due Process
Clause, the Tenth Amendment and Article I, §§1, 7, 8, and 9.

WHEREFORE, and on the grounds set forth in the attached
Memorandum of Law, it is respectfully requested that this Court
enter an Order dismissing the indictment pursuant to Article I,
§§ 1, 7, 8 and 9, and the Fifth and Tenth Amendments to the
United States Constitution; or in the alternative, grant a
hearing on the issues raised, and any further relief as the Court
deems just and proper.

Dated:    New York, New York
          June 10, 2008



                                        Jennifer L. Brown, ESQ.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA             :

        - v -                        :

CLARENCE DEAN,                       :          08 CR 067 (BSJ)

        Defendant.                   :

- - - - - - - - - - - - - - - - - - x


MEMORANDUM OF LAW IN SUPPORT OF CLARENCE
DEAN'S MOTION TO DISMISS THE INDICTMENT

                        LEONARD F. JOY, ESQ.
                        Federal Defenders of New York, Inc.
                        Attorney for Defendant
                         CLARENCE DEAN
                        52 Duane Street - 10th Floor
                        New York, New York 10007
                        Tel.: (212) 417-8713


JENNIFER L. BROWN, ESQ.

    Of Counsel


TO:  Michael Garcia, ESQ.
     United States Attorney
     Southern District Of New York
     One St. Andrew's Plaza
     New York, New York  10007
     Attn: MARK LANPHER, ESQ.
         Assistant United States Attorney

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ......................................... 1

STATEMENT OF FACTS ........................................... 2

    THE INDICTMENT ........................................... 2

    THE SEX OFFENDER REGISTRATION AND NOTIFICATION ACT ........ 2

SUMMARY OF ARGUMENT .......................................... 4

ARGUMENT ..................................................... 6

    POINT I:     THE INDICTMENT MUST BE DISMISSED BECAUSE CONGRESS
               LACKS THE POWER TO FORCE INDIVIDUALS CONVICTED OF
               PURELY LOCAL SEX OFFENSES TO REGISTER AS SEX
               OFFENDERS ...................................... 6

    POINT II:    THE INDICTMENT MUST BE DISMISSED BECAUSE SECTION
               2250 VIOLATES THE COMMERCE CLAUSE ............. 14

    POINT III:   THE INDICTMENT MUST BE DISMISSED BECAUSE THE
               STATUTE VIOLATES DUE PROCESS ................. 19

    POINT IV:    THE INDICTMENT MUST BE DISMISSED BECAUSE THE
               STATUTE IMPERMISSIBLY ENCROACHES UPON STATE POWER
               AND THEREFORE VIOLATES THE TENTH AMENDMENT .... 20

    POINT V:     THE INDICTMENT MUST BE DISMISSED BECAUSE SORNA
               VIOLATES THE NON-DELEGATION DOCTRINE ......... 22

CONCLUSION ................................................... 27

i

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA       :

    - v -               :

**CLARENCE DEAN,**           :

       Defendant.      :

- - - - - - - - - - - - - - - - - x

                    **08 CR 067 (BSJ)**

### MEMORANDUM OF LAW IN SUPPORT OF CLARENCE DEAN'S MOTION TO DISMISS THE INDICTMENT

#### PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of defendant CLARENCE in support of his motion to dismiss the Indictment.

Mr. Dean is charged in a one-count Indictment with traveling in interstate commerce and knowingly failing to register and update a registration as required by the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250 ("Section 2250").  Mr. Dean has entered a plea of not guilty to the Indictment.

**STATEMENT OF FACTS**

The Indictment

    The Indictment, alleges that Mr. Dean, "did travel in interstate commerce, and unlawfully , willfully, and knowingly did fail to update a registration as required by the Sex Offender Registration and Notification Act, to wit, Dean traveled from Alabama to New York and other states without updating his information with Alabama's sex offender database, or otherwise registering as a sex offender as required by law."

The Sex Offender Registration and Notification Act (SORNA)

    SORNA was enacted on July 27, 2006. SORNA requires each state to maintain a sex offender registry that complies with the rigid specifications of the statute. 42 U.S.C. § 16912. States are directed to make it a felony offense for an offender to fail to comply with the registration requirements of SORNA. 42 U.S.C. § 16913(e). SORNA gives states three years from its effective date to implement its requirements. 42 U.S.C. § 16924. A state that fails to comply with the requirements of SORNA faces a reduction in federal funding. 42 U.S.C. § 16925. As of September 2007, neither New York nor Alabama had enacted the regulations necessary to comply with SORNA.

    SORNA further purports to impose federal registration requirements on individual sex offenders. See 42 U.S.C. §§ 16913-16 ("The Registration Requirements"). Specifically, it

2

requires sex offenders to register and keep their registry current in the jurisdiction in which they reside. 42 U.S.C. § 16913(a). A sex offender is required to provide certain information to "the appropriate official for inclusion in the sex offender registry," including his name, address, phone number, place of employment, and "[a]ny other information required by the Attorney General." 42 U.S.C. § 16914(a). A sex offender is required to notify a jurisdiction in which he is registered of any change of address within three business days of the change. 42 U.S.C. § 16913(c). A sex offender is also required to appear in person at a local registry in order to be photographed and verify the information on file every three months for a tier III offender, six months for a tier II offender, and twelve months for a tier I offender. 42 U.S.C. § 16916.

SORNA defines "sex offender" broadly as "an individual convicted of a sex offense." 42 U.S.C. § 16911(1). A "sex offense" is defined as "a criminal offense that has an element involving a sexual act or sexual contact with another." 42 U.S.C. § 16911(5)(A)(I). The term "criminal offense" includes purely intrastate offenses. 42 U.S.C. § 16911(6). Therefore, The Registration Requirements purport to regulate individuals convicted of sex offenses under state laws, even if there is no connection to interstate activities.

3

SORNA also contains a criminal provision, Section 2250, that provides:

> Whoever
>
> (1) is required to register under the Sex Offender Registration and Notification Act;
>
> (2)(a) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by Reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
>
> (b) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250.

## SUMMARY OF ARGUMENT

The Indictment must be dismissed for a number of reasons. First, Congress lacks the power under the Commerce Clause to force citizens who have been convicted of purely local offenses under state law to register as sex offenders. The Registration Requirements, contained in 42 U.S.C. §§ 16913-16916, are therefore unconstitutional. If the statute requiring sex offenders to register is unconstitutional, then the constitutionality of Section 2250 need not be addressed since the statute under which Mr. Dean is charged, only applies to

4

defendants who are "required to register under the Sex Offender Registration and Notification Act." 18 U.S.C. § 2250(a)(1). Because Congress lacks the power to require Mr. Dean to register in the first place, this element of Section 2250 cannot be met and the Indictment must be dismissed.

Second, even if Congress has the authority to enact the Registration Requirements, Section 2250 itself violates the Commerce Clause because Congress lacks the power to federally criminalize a local sex offender's failure to register in a state-run registry. Although Section 2250, unlike the Registration Requirements, contains a jurisdictional element – the defendant must travel in interstate commerce – Congress failed to require that the purpose of the travel relate in any way to the failure to register. Therefore, the jurisdictional element is insufficient to bring the statute within any of the acceptable categories of Commerce Clause legislation. Since Mr. Dean is being prosecuted under an unconstitutional statute, the Indictment must be dismissed.

Third, the Indictment must be dismissed because the prosecution of Mr. Dean under Section 2250 violates his right to due process. At the time of the alleged offense, neither New York nor Alabama had created SORNA-compliant registries, making it impossible for Mr. Dean to comply with the Registration Requirements. Since it would have been impossible for him to

5

comply with them, his prosecution is barred on due process grounds.

Fourth, Section 2250 is an unconstitutional exercise of federal power over the states and therefore violates the Tenth Amendment. SORNA forces state officials to enforce a federal regulatory scheme, which is prohibited by the Tenth Amendment and the principles of federalism. The statute is therefore unconstitutional and the Indictment must be dismissed.

Fifth, SORNA violates the non-delegation doctrine contained in Article I §§ 1, 7, and 8 of the Constitution by delegating to the Attorney General the power to determine the retroactivity of the Registration Requirements. This is an unconstitutional delegation of legislative authority to the executive branch. The statute is therefore unconstitutional and the Indictment must be dismissed.

## ARGUMENT

### POINT I

**THE INDICTMENT MUST BE DISMISSED BECAUSE CONGRESS LACKS THE POWER TO FORCE INDIVIDUALS CONVICTED OF PURELY LOCAL SEX OFFENSES TO REGISTER AS SEX OFFENDERS.**

In order to violate Section 2250 a defendant must first be "required to register under the Sex Offender Registration and Notification Act." 18 U.S.C. § 2250(a)(1). However, as explained below, Congress lacks the authority to direct

6

individuals convicted of purely local offenses to register as state sex offenders.  Therefore Congress could not constitutionally require Mr. Dean, who was convicted of a purely local offense, to register under SORNA, and the first element of Section 2250 cannot be met.  The Indictment must therefore be dismissed.

SORNA creates affirmative requirements for "sex offenders" to register with their local jurisdiction.  42 U.S.C. §§ 16913-16916.  As described above, SORNA's definition of "sex offender" includes citizens who have been convicted solely under state criminal laws, even if their offense has no relation to interstate activity or commerce.  42 U.S.C. § 16911.  The Registration Requirements are not directed to the states, but to individuals.  For example, 42 U.S.C. §§ 16913(a) requires a sex offender to "register and keep the registration current, in each jurisdiction where the offender resides ... is an employee and ... is a student."

Congress may only enact legislation pursuant to the powers specifically delegated to it by the Constitution.  United States v. Lopez, 514 U.S. 549, 552 (1995). "Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." United States v. Morrison, 529 U.S. 598, 607 (2000). SORNA does not itself explain under what authority Congress imposes the Registration Requirements, but the only

7

power through which Congress could conceivably enact them is its power "[t]o regulate Commerce with foreign Nations, and among the several States, and with Indian Tribes." U.S. Const. Art. I § 8, cl. 3. However, under modern Commerce Clause jurisprudence, as articulated in <u>United States v. Lopez</u>, 514 U.S. 549 (1995), <u>United States v. Morrison</u>, 529 U.S. 598 (2000), and <u>United States v. Jones</u>, 529 U.S. 848 (2000), it is clear that Congress does not have the power to impose Registration Requirements on individual citizens convicted of purely intrastate offenses.

As the Court articulated in <u>Morrison</u>, "modern Commerce Clause jurisprudence has 'identified three broad categories of activity that Congress may regulate under its commerce power.'" 529 U.S. at 608-609, <u>quoting Lopez</u>, 514 U.S. at 558. First, Congress may regulate the use of and channels of interstate commerce, such as interstate highways, the mail or air traffic routes. <u>Id.</u> Second, Congress can regulate and protect the instrumentalities of interstate commerce or persons or things in interstate commerce. <u>Id.</u> Finally, Congress can regulate those activities that have a substantial effect on interstate commerce. <u>Id.</u>

The Registration Requirements have nothing to do with the channels of interstate commerce. Thus, the Registration Requirements cannot be supported by Congress' power to regulate them. Further, the Registration Requirements are imposed on

8

individuals who are not in interstate commerce nor have any
connection to interstate commerce.   Thus, the second Lopez
category, protecting the instrumentalities of, or things in
interstate commerce, cannot apply.   The Registration Requirements
can therefore only be upheld if they regulate "those activities
that substantially affect interstate commerce."   Lopez, 514 U.S.,
at 558-559.

        The Supreme Court, in Lopez and Morrison, set forth several
factors that indicate whether a regulation can be upheld as an
activity that substantially affects interstate commerce.   As an
initial matter, it is relevant whether the activity regulated has
an economic character.   Morrison, 529 U.S. at 611 ("Lopez's
review of Commerce Clause case law demonstrates that in those
cases where we have sustained federal regulation of intrastate
activity based upon the activity's substantial effects on
interstate commerce, the activity in question has been some sort
of economic endeavor").   In Lopez, the Gun-Free School Zones Act
was struck down in large part because "neither the actors nor
their conduct ha[d] a commercial character, and neither the
purposes nor the design of the statute ha[d] an evident
commercial nexus."   210 at  U.S. 559-560.   Similarly, the
Registration Requirements have no commercial character, nor any
relation to economic activity of any kind.   The stated purpose of
SORNA is "to protect the public from sex offenders and offenders

9

against children." 42 U.S.C. § 16901. These purposes have no

economic character.

The second factor examined in Lopez and Morrison is whether

the statute contained a "jurisdictional element" such as a

requirement of travel across state lines for the purposes of

committing the regulated act. Morrison, 529 U.S. at 611-612.

Although Section 2250, SORNA's criminal provision, requires a sex

offender to "travel in interstate commerce" in order to qualify

him for federal prosecution, the Registration Requirements set

forth in 42 U.S.C. § 16913, contain no such jurisdictional

element. The Registration Requirements apply to citizens whose

criminal activities are purely intrastate, and who never travel

in interstate commerce.

Third, the existence of congressional findings that indicate

that the statute is a valid exercise of Congress' Commerce Clause

power will at least enable a court "to evaluate the legislative

judgment that the activity in question substantially affect[s]

interstate commerce." Lopez, 514 U.S. at 563. SORNA is a

subchapter of the Adam Walsh Child Protection Act of 2006, H.R.

4472, 109th Cong. (2nd Sess. 2006), ("Adam Walsh Act"), which

enacts a wide range of legislation in addition to SORNA.

Although Congress included findings in other sections of the Adam

10

Walsh Act,[1] SORNA contains no such findings.  Like the Gun Free School Zone Act, SORNA is unsupported by legislative findings indicating that purely local sex crimes have any link with interstate commerce.[2]

Finally, the Court will examine the extent of the relationship between the regulated activity and its effects on commerce.  <u>Morrison</u>, 529 U.S. at 612.  There is no indication in the statute, or anywhere else, that the activities sought to be regulated by SORNA have any effect on commerce at all, not even an attenuated one.  Nor can such an effect be hypothesized by the aggregate economic effects that sex crimes and sex offenders inflict upon society.  The Supreme Court has flatly rejected the notion that the aggregate effect on interstate commerce of local criminal activity can be used to justify the invocation of Congress' Commerce Clause power.  <u>Morrison</u>, 529 U.S. at 617.  Nor can the costs of crime control or the effects of crime on

---

[1] For example, Title V of the Adam Walsh Act, entitled "Child Pornography Prevention," contains findings that "intrastate incidents of production, transportation, distribution, receipt, advertising, and possession of child pornography, as well as the transfer of custody of children for the production of child pornography, have a substantial and direct effect upon interstate commerce..." H.R.4472, Sec. 501.

[2] Even the existence of legislative findings does not guarantee that the statute will be upheld as a valid exercise of Congressional power.  The Violence Against Women Act, at issue in <u>Morrison</u>, was accompanied by "numerous findings regarding the serious impact that gender-motivated violence has on victims and their families." <u>Morrison</u>, 529 U.S. at 614.  The Court still struck down the statute, holding that "the existence of congressional findings is not sufficient, by itself, to sustain the constitutionality of Commerce Clause legislation." <u>Id.</u>  Rather, the Court held that the determination of whether an activity sufficiently affects interstate commerce is for the judiciary. <u>Id.</u>

11

"national productivity" support the use of the Commerce Clause to regulate intrastate criminal activity.  Lopez, 514 U.S. at 564; Morrison, 529 U.S. at 598, 612-613.

Each of the above four factors indicates that the Registration Requirements are unconstitutional.  First, the regulated activity has no economic character.  Second, the Registration Requirements contain no jurisdictional element. Third, the statute contains no congressional findings indicating a link with interstate commerce.  Finally, the regulated activities have an insufficient effect on interstate commerce to support an exercise of Commerce Clause power.  For all of these reasons, the Court must hold the Registration Requirements unconstitutional and dismiss the Indictment against Mr. Dean.

In Morrison, after applying all of these factors, the Court ruled that "[g]ender motivated crimes of violence are not, in any sense of the phrase, economic activity," and struck down the Violence Against Women Act as an impermissible use of Congress' power under the Commerce Clause.  Id. at 613.  Similarly, in Lopez, the Court held that the Gun Free School Zones Act, "is a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms."  Lopez, 514 U.S. at 561.  Purely local sex offenses are similarly non-economic and, while validly

12

regulated by the states, are not subject to regulation by Congress under the Commerce Clause.

Nor is this analysis in any way affected by the Supreme Court's most recent Commerce Clause case, United States v. Raich, 545 U.S. 1 (2005). In Raich, the Court held that the application of a Controlled Substances Act ("CSA") provision criminalizing the distribution and possession of medical marijuana was legally enacted under the Commerce Clause, even if the marijuana was locally grown, consumed locally, and never traveled in interstate commerce. The Court held that because marijuana is a commodity that has an interstate market, the CSA is connected to "economic" activity and is therefore a valid exercise of Congress' Commerce Clause powers:

> [u]nlike those at issue in Lopez and Morrison the activities regulated by the CSA are quintessentially economic. "Economics" refers to "the production, distribution, and consumption of commodities." Webster's Third New International Dictionary 720 (1966). The CSA is a statute that regulates the production, distribution, and consumption of commodities for which there is an established, and lucrative, interstate market. Prohibiting the intrastate possession or manufacture of an article of commerce is a rational (and commonly utilized) means of regulating commerce in that product.

Raich, 545 U.S. at 25-26.

Clearly this reasoning has no application to SORNA, which in no way regulates anything resembling economic activity. SORNA, whose stated purpose is "to protect the public from sex offenders and offenders against children," 42 U.S.C. § 16901, far more

13

closely resembles the statutes struck down in <u>Lopez</u> and <u>Morrison</u>.

For the reasons stated above, the Registration Requirements of SORNA are unconstitutional. As it is necessary for a defendant to be "required to register under the Sex Offender Registration and Notification Act" in order to violate Section 2250, and Mr. Dean cannot be required to register under SORNA because the Registration Requirements are unconstitutional, the Indictment against him must be dismissed.

<u>**POINT II**</u>

**THE INDICTMENT MUST BE DISMISSED BECAUSE SECTION 2250 VIOLATES THE COMMERCE CLAUSE.**

Just as the Registration Requirements are unconstitutional, SORNA's criminal provision, Section 2250, is also invalid under the Commerce Clause. Section 2250 does not fall in any of the "three broad categories of activity that Congress may regulate under its commerce power," discussed above. <u>See</u> <u>Morrison</u>, 529 U.S. 608-609, <u>quoting</u> <u>Lopez</u>, 514 U.S. at 558. It does not regulate the use of and channels of interstate commerce, it does not regulate and protect the instrumentalities of interstate commerce or persons or things in interstate commerce, and it does not regulate those activities that have a substantial effect on interstate commerce. Congress therefore lacks the authority to enact Section 2250, and the Indictment must be dismissed.

The Government might argue that because Section 2250 requires that a defendant "travel in interstate or foreign

14

commerce," it falls into the second <u>Lopez</u> category, which permits legislation regulating "people or things in interstate commerce." This reasoning must be rejected.  Unlike other, similar statutes, such as the Travel Act, 18 U.S.C. 1952, which requires a defendant to travel in interstate commerce with the intent to commit certain prohibited acts, the travel element of Section 2250 does not require that the travel occur in connection to a defendant's failure to register.  Thus, if a defendant is convicted of a sex offense in one state, fails to register in that same state or another state, and then travels to another state for a legal purpose, he violates Section 2250 even though his travel has no interstate connection to the failure to register.

Further, the statute does not specify when the travel must have occurred.  If a defendant traveled out of state ten years before he was required to register, he would still have "traveled in interstate or foreign commerce" under Section 2250.  Upholding Section 2250 based on its travel requirement would allow Congress to federalize every local criminal offense simply by making it a crime for someone who committed a local offense to travel in interstate commerce at some point in his life.  Clearly, some nexus must exist between the criminal activity and the interstate travel in order to satisfy the Commerce Clause.  Because Section 2250 contains no such nexus, it cannot be said to regulate

15

"people in interstate commerce."

Nor can Section 2250 be upheld as a regulation of an activity that "substantially affects interstate commerce" under the Court's third category of valid Commerce Clause legislation. The analysis applied in Point I above to SORNA's registration requirements under Morrison and Lopez also applies to Section 2250, which seeks to regulate the same activities.  As noted above, to determine if an activity "substantially affects interstate commerce" a court must examine; (1) whether the activity has an economic character, Morrison, 529 U.S. at 611, (2) whether the statute contains a "jurisdictional element" such as a requirement to travel across state lines for the purposes of committing the regulated act, Id. at 611-612, (3) whether there are congressional findings indicating the statute is a valid exercise of Congress' Commerce Clause power, Lopez, 514 U.S. at 563, and (4) the extent of the attenuation between the regulated activity and its affects on commerce.  Morrison, 529 U.S. at 612.

First, like the Registration Requirements, discussed in Point I, Section 2250 regulates activity that is non-economic in nature.  Thus, it does not "substantially affect interstate commerce."  See Morrison, 529 U.S. at 611; Lopez, 210 U.S. at 559-560.

Second, although Section 2250 has a "jurisdictional statement" that requires a defendant to have "traveled in

16

interstate or foreign commerce," this is insufficient by itself
to make the statute a legitimate exercise of Commerce Clause
authority.  The presence of a jurisdictional element is not
dispositive, but rather only "may establish that the enactment is
in pursuance of Congress' regulation of interstate commerce."
Morrison, 529 U.S. at 612 (emphasis added).  Section 2250's
jurisdictional element is insufficient for a court to declare
that the statute has an effect on interstate commerce because
there is no nexus between the travel and the defendant's failure
to register, which is a purely local act.  Accordingly, the
jurisdictional element of Section 2250 cannot bring the statute
into the third category of acceptable Commerce Clause
legislation.

    Third, as mentioned above, SORNA contains no congressional
findings that support the conclusion that Section 2250 has an
effect on interstate commerce.

    Finally, just like the Registration Requirements, any
economic effect that the activities regulated by Section 2250
might have on interstate commerce is too attenuated to bring the
statute within the authority of the Commerce Clause.  The
potential aggregated economic effects of sex offenders' failure
to register are insufficient to sustain the statute under both
Lopez and Morrison.  Morrison, 529 U.S. at 617; Lopez, 514 U.S.
at 564.

17

Although several district courts have held that Section 2250 was validly enacted under the Commerce Clause[3], the Second Circuit has yet to rule on this issue, and at least one district court has recently found that the statute violates Congress' power under the Commerce Clause.  See <u>United States v. Powers</u>, 2008 U.S. Dist. LEXIS 32269 (M.D. Fla, April 18, 2008).  In <u>Powers</u>, the court concluded that although the statute contains a "jurisdictional element" which purports to establish a link between the failure to register as a sex offender and interstate commerce, this statutory "lip service" is insufficient because "[s]imply put there is no nexus between the crime (failure to register) and the interstate travel." <u>Powers</u>, <u>supra</u> at *12-13 Moreover, none of the courts have examined the constitutionality of the Registration Requirements, detailed in Part I above.

Section 2250 does not fall within any of the categories of activities that Congress may regulate through the exercise of its power under the Commerce Clause.  The statute is therefore unconstitutional and the Indictment must be dismissed.

---

[3] <u>See United States v. Ditomasso</u>, 2008 U.S. Dist. LEXIS 37870 (D. RI) (May 8, 2008) (collecting cases).

<u>POINT III</u>

**THE INDICTMENT MUST BE DISMISSED BECAUSE THE
STATUTE VIOLATES DUE PROCESS.**

SORNA directs each "jurisdiction" (which includes both

states and jurisdictions other than states, 42 U.S.C. §§

16911(9), 16912, 16927), to create a sex offender registry in

accordance with the requirements of the Act. 42 U.S.C. § 16912.

SORNA also directs the states to make it a felony offense to fail

to register within the state. 42 U.S.C. § 16913(e). One of the

elements of the federal offense, as set forth in 18 U.S.C §

2250(a)(3), is that the sex offender "knowingly fails to register

or update a registration as required by the Sex Offender

Registration and Notification Act." Although both New York and

Alabama have sex offender registries that predate SORNA, at the

time of the alleged offense, neither had implemented the more

detailed and onerous provisions of SORNA.[4] It would therefore be

impossible for Mr. Dean to comply with the reporting requirements

of SORNA in New York or Alabama, as there is no state apparatus

that would enable him to comply. Criminalizing the failure to do

something that is impossible to do violates the Due Process

Clause's guarantee of fundamental fairness. See <u>e.g.</u>, <u>United</u>

<u>States v. Dalton</u>, 960 F.2d 121, 124 (10th Cir. 1992)(it is a

_____

[4] SORNA states "[e]ach jurisdiction shall implement this subchapter before the
later of – (1) 3 years after July 27, 2006; and (2) 1 year after the date on
which the software described in section 16923 of this title is available." 42
U.S.C. § 16924. The states must therefore implement SORNA by July 27, 2009,
at the earliest.

19

violation of fundamental fairness to hold someone liable for a crime when an essential element of the crime is his failure to perform an act that he is incapable of performing). As it was impossible for Mr. Dean to comply with SORNA, the statute violates his due process rights and must be dismissed.

**POINT IV**

**THE INDICTMENT MUST BE DISMISSED BECAUSE THE STATUTE IMPERMISSIBLY ENCROACHES UPON STATE POWER AND THEREFORE VIOLATES THE TENTH AMENDMENT.**

The Registration Requirements, which impose a federal obligation on offenders to register in individual state-created and state-run sex offense registries, are an unconstitutional encroachment of federal power on state sovereignty. The Registration Requirements therefore violate the Tenth Amendment and are invalid. As described above, in order to violate Section 2250, a defendant must first be required to register under SORNA. Since the Registration Requirements are unconstitutional, Mr. Dean cannot be required to register under SORNA, and the Indictment must be dismissed.

The Tenth Amendment provides that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const., amend. X. The Tenth Amendment has been applied to uphold the principles of federalism by limiting the

20

power the federal government may exercise over state activities.
For example, the Tenth Amendment prohibits the federal government
from commandeering state officials into enacting or administering
federal law.  Printz v. United States, 521 U.S. 898, 935 (1997).
Although SORNA offers the states financial incentives to create
SORNA-compliant registries, 42 U.S.C. § 16925, neither New York
nor Alabama had yet created one as of the date of the alleged
offense.  However, the federal Registration Requirements, which
require individual sex offenders to register in their state of
residence, are currently in effect.  42 U.S.C. §§ 16913-26; 72 FR
8894, 8895, 2007 WL 594891 (2007).  The Registration
Requirements, therefore, force the state officials who run the
local registries to accept federally required sex offender
registrations before their state chooses to adopt the SORNA
provisions voluntarily.

     In Printz, the Supreme Court struck down a law requiring
local law enforcement officials to conduct background checks of
prospective handgun purchasers.  The Court held, "[t]he Federal
Government may neither issue directives requiring the states to
address particular problems, nor command the States' officers, or
those of their political subdivisions, to administer or enforce a
federal regulatory program."  521 U.S. at 935; see also New York
v. United States, 505 U.S. 144 (1992) (Congress did not have the
power to compel the states to enact a federal program regulating

                              21

the disposal of toxic waste).  The local law enforcement

officials in <u>Printz</u> are analogous to the law enforcement

officials who run state sex offender registries.  Just as

Congress has no power to compel local law enforcement to conduct

federally mandated background checks, it has no power to compel

local law enforcement to accept registrations from federally

mandated sex offender programs.  <u>See</u> <u>also</u> <u>United States v.</u>

<u>Snyder</u>, 852 F.2d 471, 475 (9th Cir. 1988)("the federal government

has no constitutional authority to interfere with a state's

exercise of its police power except to the extent the state's

action intrudes on any of the spheres in which the federal

government itself enjoys the power to regulate").  SORNA's

registration requirements are therefore invalid under the Tenth

Amendment and the Indictment must be dismissed.


**POINT V**

**THE STATUTE MUST BE DISMISSED BECAUSE SORNA
VIOLATES ARTICLE I, §§1, 8, and 7.**

SORNA delegates to the Attorney General "the authority to

specify the applicability of the requirements of this subchapter

to sex offenders convicted before July 27, 2006 or its

implementation in a particular jurisdiction, and to prescribe

rules for the registration of any such sex offenders and for

other categories of sex offenders who are unable to comply with

subsection (b) of this section." 42 U.S.C. §16913.  In addition,

22

Section 16917 delegates to the Attorney General the authority to "prescribe rules for the notification of sex offenders who cannot be registered in accordance with subsection (a) of this section." 42 U.S.C. §16917(b).

The effect of the delegation of authority described above is to permit the Attorney General to make the legislative judgement regarding whether or not SORNA will have retroactive effect. The authority to legislate or make law, however, is entrusted solely to Congress. U.S. Const. art. I, §§ 1, 8. This authority carries with it a corresponding limitation: Congress cannot delegate its legislative authority to another branch of the government. See A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 529 (1935) (explaining that "Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested"); Panama Refining Co. v. Ryan, 293 U.S. 388, 421, 432 (1935) (observing that "[i]f the citizen is to be punished for the crime of violating a legislative order of an executive officer . . ., due process of law requires that it shall appear that the order is within the authority of the officer").

The doctrine prohibiting Congress from delegating its authority to another branch is a necessary component of the separation of powers that informs our tripartite system of government and the checks and balances inherent in our

23

constitutional framework.  See Mistretta v. United States, 488 U.S. 361, 380-81 (1989) (describing the separation of powers as essential to the preservation of liberty).  In Panama Refining Co., the Court invalidated a delegation of authority under the National Industrial Recovery Act ("NIRA") to the executive branch to prohibit the interstate transport of petroleum produced or withdrawn in violation of state law.  293 U.S. at 406, 432.  In so doing, the Court emphasized that the statute did not declare any policy respecting the transportation of excess production, did not qualify the President's authority, did not establish any criterion governing the President's course, and treated disobedience as a crime.  See Id. at 415.

Similarly, in A.L.A. Schechter Poultry, the Court addressed another provision of NIRA, which authorized the president to approve codes of fair competition from industry groups or prescribe such codes.  295 U.S. at 520-21.  A violation of a code was a crime, with each day of the violation constituting a separate offense.  See Id. at 523.  As in Panama Refining Co., the Court focused or the absence of standards and restrictions in connection with the broad grant of authority.  Id. at 542.  Such concerns are particularly significant where, as here, the delegation involves criminal liability.  See Fahey v. Mallonee,

24

332 U.S. 245, 249 (1947).[5]

In this case, the delegation extends to the chief law enforcement officer of the United States the power to determine the retrospective scope of a criminal statute.  In other words, it enables the executive branch to legislate the reach of a criminal statute with no limits on the Attorney General's exercise of his discretion.  He is free to decide how far back the registration requirements should be extended, now matter how arbitrary his decision might be.

This delegation is particularly troubling since retrospective legislation is disfavored, and, in those limited circumstances where it is permitted, a legislative policy judgment need be manifest.  See Immigration and Naturalization Service v. St. Cyr., 533 U.S. 289, 315-16 (2001); Landgraf v. USI Film Products, 511 U.S. 244, 271 (1994)(discussing the presumption against retroactive effect and emphasizing the need for clear language requiring retroactivity).  Here, there is no indication that Congress made such a judgment; rather, it improperly abdicated that legislative responsibility to the executive.

---

[5] In the context of a delegation to criminalize certain conduct, a stricter standard ought to apply.  See generally United States v. Robel, 389 U.S. 258, 274, 75 (1967) (Brennen, J., concurring).  But cf. United States v. Touby, 909 F.2d 759, 765 (3d Cir. 1990)(acknowledging differing authority respecting the standard applicable in the criminal statutory context), aff'd, 500 U.S. 160, 166 (1991) (declining to reach the issue concerning the appropriate standard).

Congress may, of course, obtain assistance from other branches of government, provided that the legislative act lays down an intelligible principle that directs and fixes the discretion delegated to the agency or person. See Mistretta, 488 U.S. at 372 (citing J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394 (1928)). This type of delegation is evinced by the rule-making authority given to agencies charged with administering significant environmental or economic mandates. See, e.g., Whitman v. American Trucking Ass'ns, Inc., 531 U.S. 457, 473-74 (2001) (approving a delegation of authority to the Environmental Protection Agency to set ambient air quality standards); Yakus v. United States, 321 U.S. 414, 426 (1944) (concluding that the Price Administrator may fix prices under the Emergency Control Act of 1942).[6]

In the present matter, by contrast, the delegation is not limited to the implementation of the terms of SORNA, but permits the Attorney General to determine the very individuals SORNA applies to, with no standards to guide this determination. This is precisely the type of delegation the Framers would have viewed as constitutionally impermissible.

---

[6] Although delegation in the regulatory arena has been generally accepted in the wake of New Deal-era legislation, there has been considerable scholarly debate over the erosion of the non-delegation doctrine. See, e.g., Jeffrey Rosen, The Unregulated Offensive, N.Y. Times, Apr. 17, 2005, §6, at 42; Symposium, The Constitution in Exile: Is it Time to Bring it in from the Cold?, 51 Duke L.J. 1(2001); Douglas H. Ginsburg, Delegation Running Riot, Regulation, No. 1, 1995, at 85 (reviewing David Schoenbrod, Power Without Responsibility: How Congress Abuses the People Through Delegation (1993)).

While district courts have divided over the question of how to interpret the delegation of the attorney general in 42 U.S.C. § 16913(d), see United States v. Ditomasso, supra at *20, this is an open question in the Second Circuit. The Eleventh Circuit recently addressed this issue in United States v. Madera, 2008 U.S.App.LEXIS 11078 (11th Cir., May 23, 2008). In Madera, the 11th Circuit dismissed an indictment which charged conduct which occurred "during the gap period between SORNA's enactment and the Attorney General's retroactivity determination." Madera, at *16. In reaching this holding, the court found that 42 U.S.C. §16913(d) "granted the Attorney General unfettered discretion to determine both how and whether SORNA was to be retroactively applied." Id. The delegation to the Attorney General of such broad power to amend SORNA by making it retroactive is an unconstitutional delegation of authority.

There is no provision in the Constitution that grants the executive branch the power "to enact, to amend, or to repeal statutes." Clinton v. City of New York, 542 U.S. 417, 438 (1998). Just as the line-item veto and legislative veto are unconstitutional, so too the delegation of the authority under 42 U.S.C. §16913(d) violates Article I, §7 of the Constitution because is subverts the "finely wrought" procedure proscribed for how laws are to be enacted and amended. Clinton v. City of New York, 542 U.S. 417, 447-8 (1998) (quoting INS v. Chadha, 462 U.S.

27

919, 951 (1983).  As the court observed in <u>INS v. Chadha</u>, the "[a]mendment and repeal of statutes, no less than enactment, must conform with Art. I" <u>Chadha</u>, 462 US. At 953.  SORNA, is therefore unconstitutional and the Indictment must be dismissed.

### CONCLUSION

The Indictment must be dismissed because: (1) Congress does not have the power under the Commerce Clause to compel individuals convicted of state crimes to comply with SORNA's registration requirements; (2) Congress does not have the power under the Commerce Clause to enact Section 2250, SORNA's criminal provision; (3) the prosecution of Mr. Dean for violating an act which would have been impossible for him to comply with is a violation of his Due Process rights; (4) SORNA forces state law enforcement officials to comply with a federal regulatory scheme, which violates the Tenth Amendment; and (5) SORNA violates the Article I, sections 1, 7, and 8.  For all these reasons, the Indictment against Mr. Dean must be dismissed.


Dated:    New York, New York
          June 10, 2008

28

Respectfully submitted,

LEONARD F. JOY, ESQ
Federal Defenders of New York, Inc.

By:    _____
       JENNIFER L. BROWN, ESQ.
       Attorney for Defendant
       **CLARENCE DEAN**
       52 Duane Street, 10th Floor
       New York, New York 10007
       Tel.:  (212) 417-8713

TO:  Michael Garcia, ESQ.
     United States Attorney
     Southern District Of New York
     One St. Andrew's Plaza
     New York, New York  10007
     Attn: **MARK LANPHER, ESQ.**
         Assistant United States Attorney

29