UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

          -v.-                    :     08 Cr. 067 (BSJ)

CLARENCE DEAN,                    :

               Defendant.    :

- - - - - - - - - - - - - - - - - - x


          MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S
               MOTION TO DISMISS THE INDICTMENT


                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York
                              One St. Andrew's Plaza
                              New York, New York 10007


MARK LANPHER
Assistant United States Attorney
     -Of Counsel-

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the pretrial motion of Clarence Dean, the defendant, filed with the Court on June 10, 2008.

The defendant is charged in a one-count Indictment with traveling in interstate commerce and unlawfully, willfully, and knowingly failing to register and update a registration as required by the Sex Offender Registration and Notification Act ("SORNA"), in violation of Title 18, United States Code, Section 2250. The defendant seeks to dismiss the Indictment in this case pursuant to Rule 12 of the Federal Rules of Criminal Procedure, arguing that Section 2250 (1) exceeds Congress's powers because it incorporates federal registration requirements for sex offenders that Congress lacked the power to pass; (2) exceeds Congress's powers because, although it only criminalizes sex offenders who travel in interstate commerce, that jurisdictional requirement is insufficient to bring it within Congress's powers; (3) violates the defendant's right to due process; (4) improperly encroaches on state authority in violation of the Tenth Amendment; and (5) violates the non-delegation doctrine contained in Article I §§ 1, 7, and 8 of the Constitution. The defendant's motion is without merit and should be denied.

## STATEMENT OF THE FACTS

### A. Background on the Defendant

On October 20, 1995, the defendant was convicted in the Circuit Court of the Fifteenth Judicial Circuit of Florida for an attempted lewd act on a child. The defendant was sentenced to 37 months' imprisonment for this offense, and was released on October 6, 1998. Upon release the defendant moved to Georgia and registered with the state's sex offender registry on October 7, 1998. The defendant subsequently moved to Texas, where, on May 2, 2003, in the 390th Judicial District Court of Travis County, Texas, he was convicted of attempted failure to register as a sex offender. Dean later moved to Florida, where he was arrested yet again, on November 16, 2005, for failing to register as a sex offender.

On or about July 25, 2006, the defendant moved to Alabama and registered with Alabama's sex offender registry. Dean updated this registration after moving within Alabama in September 2006. However, in March 2007, the Shelby County, Alabama, sheriff's department learned that the defendant was no longer living at his registered address; he was missing. A warrant issued in Alabama on March 8, 2007, charging the defendant with failing to comply with the state's registration laws for sex offenders.

From March 2007 through August 2007, the defendant traveled through various states and failed to comply with any state

3

registration laws.  His whereabouts were undocumented.  On August 30, 2007, Dean resurfaced in New York City, where he was arrested for murder after a woman's naked body was found wrapped in plastic under the defendant's hotel room bed.

On January 25, 2008, a grand jury returned a one-count Indictment charging Dean with traveling in interstate commerce and unlawfully, willfully, and knowingly failing to register and update a registration as required by the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250.  The defendant appeared before Magistrate Judge Michael B. Dolinger and was arraigned on the Indictment on March 13, 2008, at which time he entered a plea of not guilty.[1]

### B. Background on SORNA

Sex offender registration is not a novel concept.  Sex offender registration laws have existed in every state in the nation for years.  See SORNA Interim Rule, 72 Fed. Reg. 8894, 8895 (Feb. 28, 2007)(discussing background to SORNA).  Moreover, national standards for sex offender registration laws have existed since Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act in 1994. See id.  These laws, however, have often been better on paper than in practice.

---

[1] The defendant was transferred from New York state custody to federal custody pursuant to a writ for purposes of arraignment, and has since been returned to New York state custody, where he is awaiting trial for the August 2007 murder.

One of the primary shortcomings of sex offender registration laws in the United States has been the ability of convicted sex offenders to evade their registration requirements with impunity by moving from one state to another and, if ultimately found, claiming a lack of notice regarding the new states' laws.  The rather loosely integrated patchwork of state laws could not adequately account for the public safety risk created by non-compliant sex offenders who moved from state-to-state.  In fact, it was estimated in 2006 that 100,000 of the over 500,000 convicted sex offenders who had registered with states were missing.  See 152 Cong. Rec. S8012, 8014 (daily ed. July 20, 2006) (statement of Sen. Hatch); 152 Cong. Rec. H5705, 5722 (daily ed. July 25, 2006) (statement of Rep. Sensenbrenner). These mobile and missing sex offenders were among the most dangerous members of the sex offender population.

On July 27, 2006, Congress passed the Adam Walsh Child Protection and Safety Act ("Adam Walsh Act") to "protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." Adam Walsh Child Protection and Safety Act ("Adam Walsh Act"), Pub. L. 109-248, Preamble (codified at scattered sections of the U.S.C.).  While the Adam Walsh Act had numerous facets, Title I, known as the Sexual Offender Registration and Notification Act ("SORNA"), was enacted specifically to strengthen and increase

the effectiveness of the nation's sex offender registries by eliminating gaps and loopholes in the patchwork of state sex offender registration laws.  See 42 U.S.C. § 16901 ("Declaration of Purpose"); SORNA Interim Rule, 72 Fed. Reg. 8894, 8895 (Feb. 28, 2007).  The ultimate goal of SORNA was to make sex offender registration obligations uniform and real, even for those sex offenders who would rather migrate than continue to register.

SORNA sought to accomplish its goal, with the assistance of the states, by creating national standards for sex offender registries, see 42 U.S.C. § 16911(10), enforced by federal criminal penalties for sex offenders who fail to register and travel in interstate commerce, see 18 U.S.C. § 2250.  SORNA encourages jurisdictions to implement such standards by July 2009, and conditions the receipt of 10% of Byrne Grant funding on a jurisdiction's substantial compliance.  See 42 U.S.C. § 16925. Some of the fundamental standards that SORNA encourages jurisdictions to incorporate into their registration systems include a uniform definition of "sex offender," see 42 U.S.C. § 16911, a uniform set of information sex offenders are to provide state registries, see 42 U.S.C. § 16914, and a uniform set of circumstances under which sex offenders would be required to register, see 42 U.S.C. § 16913.

The last of these provisions (the "Registration Requirements") is facially directed at sex offenders, and states are encouraged to make it a felony for a sex offender to fail to

comply.  See 42 U.S.C. §§ 16913(e), 16925(d).  The Registration
Requirements instruct sex offenders to "register, and keep the
registration current, in each jurisdiction where the offender
resides, where the offender is an employee, and where the
offender is a student." 42 U.S.C. § 16913(a).  The Registration
Requirements further state that a sex offender "shall, not later
than 3 business days after each change of name, residence,
employment, or student status, appear in person" and update his
or her registration information.  42 U.S.C. § 16913(c).  This
national standard is neither particularly burdensome nor invasive
to the sex offender.  The sex offender is still required to
register as he or she would have under the patchwork of state
laws.  However, the national standard clarifies a sex offender's
obligation, and he or she can no longer claim a lack of notice
regarding the minimum requirements of a new state's registration
laws upon moving.

As noted above, SORNA contains a federal law enforcement
provision, codified at 18 U.S.C. § 2250.  Section 2250 targets
convicted state sex offenders who fail to comply with the
Registration Requirements and travel in interstate commerce.
Section 2250 provides, in relevant part, that:

(a) In general. Whoever—

(1) is required to register under the Sex Offender
Registration and Notification Act;

(2) (A) is a sex offender as defined for the
purposes of the Sex Offender Registration and

> Notification Act by reason of a conviction
> under Federal law (including the Uniform Code
> of Military Justice [10 USCS §§ 801 et
> seq.]), the law of the District of Columbia,
> Indian tribal law, or the law of any
> territory or possession of the United States;
> or
>
> (B) travels in interstate or foreign
> commerce, or enters or leaves, or resides in,
> Indian country; and
>
> (3) knowingly fails to register or update a
> registration as required by the Sex Offender
> Registration and Notification Act;

shall be fined under this title or imprisoned not more
than 10 years, or both.

18 U.S.C. § 2250(a).

## SUMMARY OF ARGUMENT

The five separate grounds for dismissal asserted by the defendant are addressed in turn below.

First, the defendant is incorrect that the constitutionality of the Registration Requirements detailed under 42 U.S.C. § 16913 must be considered in this case independent of Section 2250, the criminal statute through which they are enforced. Even standing alone, however, the Registration Requirements were properly passed because Congress has the authority under the Commerce Clause to regulate individuals engaged in intrastate activity so long as the activity – individually or in the aggregate – has a substantial effect on interstate commerce. In aggregate, sex offenders' obligations to register within a given state, in the context of the patchwork system of state registration laws that

8

existed before SORNA and the realization that sex offenders do not spend their entire lives in a single state, had precisely such an effect.  The Registration Requirements detailed in Section 16913 are thus a legitimate effort to impose uniformity on state laws.  Moreover, while Section 16913 is a proper exercise of Congress's Commerce Clause Powers, it also could be upheld under Congress's Necessary and Proper Powers.  Section 16913 is a reasonable means to achieve Congress's legitimate goal of criminalizing the interstate travel of sex offenders who fail to register, a goal that could only be pursued effectively with the imposition of some uniformity on state registration laws.

Second, 18 U.S.C. § 2250, is itself within Congress's Commerce Clause Powers.  Congress has the duty to protect interstate commerce, and does so by regulating persons or things in interstate commerce.  Section 2250 falls within that sphere of power by criminalizing only interstate travel by sex offenders who knowingly fail to maintain a registration.

Third, SORNA does not violate the defendant's due process rights.  Contrary to the defendant's argument, criminal liability is not contingent on each state implementing a detailed provision conforming to SORNA's standards.  That is because SORNA (as implemented by the Attorney General) requires that sex offenders register under pre-existing state registries, which the defendant concedes existed in New York and Alabama at the time of his offense.  Compliance was thus in no way impossible.

9

Fourth, SORNA does not violate the Tenth Amendment.  SORNA does not force or require states to do anything more than they had already done themselves by implementing sex offender registration systems.  SORNA merely provides financial incentives to adopt uniform federal standards, and it is within Congress's Powers to provide such incentives to fulfill statutory directives.

Fifth, the Attorney General's determination that SORNA applies to individuals convicted of sex offenses prior to its passage does not violate the non-delegation doctrine contained in Article I §§ 1, 7, and 8 of the Constitution.  Congress has throughout history delegated authority to other branches of government.  In this case, Congress's clear goal and purpose in creating SORNA provided intelligible principles that the Attorney General reasonably used as guidance in his retroactivity determination._

## ARGUMENT

### I. THE CREATION OF NATIONAL REGISTRATION REQUIREMENTS WAS A VALID EXERCISE OF CONGRESS'S COMMERCE CLAUSE AND NECESSARY AND PROPER CLAUSE POWERS.

The defendant moves to dismiss the Indictment on the grounds that 18 U.S.C. § 2250 incorporates Registration Requirements, detailed in 42 U.S.C. § 16913, which he alleges are unconstitutional.  Put differently, he argues that he cannot be guilty of traveling in interstate commerce and "knowingly

10

fail[ing] to register or update a registration as required by the Sex Offender Registration and Notification Act" because SORNA could not constitutionally require him to register in the first place.  18 U.S.C. § 2250.  His argument is without merit.

Preliminarily, the defendant's premise – that Your Honor should consider the constitutionality of the Registration Requirements independent of Section 2250, the criminal provision that enforces them - is flawed.  Standing alone, the Registration Requirements are "requirements" in name only.  Another provision of SORNA encourages states to make it a crime for sex offenders to fail to comply with the Registration Requirements.  See 42 U.S.C. §§ 16913(e), 16925(d) (encouraging, but not requiring, states to make it a felony offense for a sex offender to fail to comply with the Registration Requirements).  However, it is not a federal crime for a sex offender to fail to comply with § 16913; it is only a federal crime for a sex offender to fail to comply with § 16913 and travel in interstate commerce.  See 18 U.S.C. § 2250; United States v. Passaro, No. 07-cr-02308-BEN, at 10-11 (S.D. Cal. Dec. 17, 2007)(rejecting stand-alone challenge to Registration Requirements) (attached as Exhibit A).  As discussed at length in Part II, infra, such a "jurisdictional element" ensures that "the [activity] in question affects interstate commerce."  United States v. Lopez, 514 U.S. 549, 561 (1995).

Similarly, even if the defendant's constitutional challenge to the Registration Requirements were facially meritorious, he

should be barred from making it because, at least as applied to him, Congress was within its authority to require him to register as a sex offender given that he traveled in interstate commerce after becoming a sex offender.  See infra, Part II; Sabri v. United States, 541 U.S. 600, 609 (2004) (discouraging facial challenges where "the most [a defendant] could say was that the statute could not be enforced against him, because it could not be enforced against someone else whose behavior would be outside the scope of Congress's Article I authority to legislate").  In essence, the defendant is claiming that the Registration Requirements are unconstitutional as overbroad by regulating sex offenders whether or not they travel in interstate commerce and whether or not - as in the defendant's case - their travel is connected with their failure to register.[2]  But because the Registration Requirements will only be enforced where a defendant travels in interstate commerce, it is hard to see when – or why – such a facial challenge would ever be appropriate.  Nevertheless, because the defendant's challenge also fails on its own terms, the Government urges Your Honor to find the Registration Requirements constitutional standing alone as a proper exercise

---

[2]As explained in the background section above, the defendant was registered as a sex offender (and thus in compliance with SORNA) prior to commencing his interstate travel in March 2007. It was only upon traveling that he stopped registering, leading to the criminal charge in this case.

of Congress's power under the Commerce Clause or, alternatively, the Necessary and Proper Clause.

**A. Commerce Clause**

Article I, Section 8, Clause 3 of the United States Constitution gives Congress the power "[t]o regulate Commerce with Foreign Nations, and among the several states, and with the Indian tribes." U.S. Const. art. I, § 8, cl. 3. The Supreme Court has identified three broad categories of activity that Congress may regulate under its commerce power. First, Congress may regulate the use and channels of interstate commerce. Second, Congress may regulate the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Third, Congress may regulate those activities having a substantial relation to interstate commerce, that is, those activities that substantially affect interstate commerce. <u>United States</u> v. <u>Lopez</u>, 514 U.S. 549, 558-59 (1995). In evaluating Congress's judgment that a regulated activity substantially affects interstate commerce, the Supreme Court has identified four factors to consider, including: (1) whether the related activity is economic in nature; (2) whether the statute contains a jurisdictional element; (3) the existence of express congressional findings regarding the effects of the regulated activity upon interstate commerce; and (4) the link between the regulated activity and its substantial effect on interstate

13

commerce.  United States v. Morrison, 529 U.S. 598, 610-12
(2002).

Since its decision in NLRB v. Jones & Laughlin Steel Corp.,
301 U.S. 1 (1937), the Supreme Court, with few exceptions, has
interpreted the Commerce Clause expansively, upholding many
exertions of legislative authority.  In part, that is because
statutes are presumed to be constitutional.  See United States v.
Morrison, 529 U.S. at 607.  Indeed, congressional enactments will
only be invalidated on a plain showing that Congress exceeded its
authority under the Constitution.  Id.

The Registration Requirements of SORNA were properly enacted
to regulate activity that had a substantial effect on interstate
commerce.  See Gonzales v. Raich, 545 U.S. 22 (2005) (stating
that Congress may regulate an activity where a "rational basis"
exists for concluding that the activity substantially affects
interstate commerce).  Specifically, they were designed to close
the gaps in the patchwork of state sex offender registration laws
that had allowed approximately 100,000 sex offenders to go
missing.  See 152 Cong. Rec. S8012, 8013 (daily ed. July 20,
2006) (statement of Sen. Hatch).  Congress had a considerable
challenge in creating a uniform and comprehensive national
registration system.  See generally United States v. Cardenas,
No. 07-80108, 2007 U.S. Dist. LEXIS 88803, at *22 (Nov. 5, 2007)
(upholding SORNA in face of constitutional challenges).  Sex
offenders were already required to register in each state, yet

14

many who traveled between states were not complying with the new states' laws.  Indeed, the lack of uniformity among states' laws, and the varied registration requirements in every state, had a substantial effect on interstate commerce.  The Registration Requirements of SORNA squarely addressed this by encouraging uniformity with the minimum invasion into states' traditional domain.  They do not preempt state registration laws; they encourage uniformity to make all such laws more effective.

Avoiding SORNA's overall purpose, the defendant argues that the Registration Requirements detailed in Section 16913 unconstitutionally impose requirements on individuals convicted of purely intrastate activities, regardless of whether they ever travel in interstate or foreign commerce.  Yet individuals engaging in purely intrastate activities <u>can</u> be regulated under Congress's Commerce Clause Power, as long as their activity, individually or in aggregate, has a substantial effect on interstate commerce.  For example, the Supreme Court in <u>Wickard</u> v. <u>Filburn</u>, 317 U.S. 111, 118, 128-29 (1942), upheld Congress's regulation of an individual farmer who grew wheat for his own use, not to be sold.  <u>See</u> <u>id.</u> at 19.  Similarly, in <u>Gonzales</u> v. <u>Raich</u>, 545 U.S. 1 (2005), the Supreme Court concluded that Congress's Commerce Clause Power allowed it to regulate an individual who grows, but does not sell, marijuana for medical purposes.

The defendant cites to <u>Lopez</u>, where the Supreme Court held that Congress exceeded its Commerce Clause Powers by enacting the Gun-Free School Zone Act, 18 U.S.C. § 922(q)(1)(A), because the Act did not regulate a commercial activity, nor did it contain a requirement that the possession of a firearm in a school zone be connected in any way to interstate commerce.  <u>United States</u> v. <u>Lopez</u>, 514 U.S. at 551.  Likewise, the defendant cites to <u>Morrison</u>, where the Supreme Court ruled that Congress exceeded its Commerce Clause Powers in enacting the Violence Against Women Act, 42 U.S.C. § 13981(b), which provided a federal civil remedy for victims of gender-motivated violence.  Yet unlike with the statutes at issue in <u>Lopez</u> and <u>Morrison</u>, Congress is not attempting to regulate a violent crime here, or even the sex offense itself.  Rather, SORNA imposes uniformity on a sex offender's duty to register so that, as sex offenders travel in interstate commerce, there will be no gaps or loopholes among the various states' registrations.

Even if Section 16913 facially does not have a jurisdictional element,[3] and thus potentially regulates purely intrastate activity, it can still be upheld under Congress's Commerce Clause Power because of the aggregate effect of such activity.  Again, that was the Supreme Court's rationale in <u>Raich</u>

_____

[3]As explained above, the Government respectfully submits that Section 16913 effectively <u>does</u> have a jurisdictional element because it can only be enforced through 18 U.S.C. § 2250, which requires interstate travel.

and <u>Wickard</u> v. <u>Filburn</u>.   Though <u>Raich</u> and <u>Wickard</u> v. <u>Filburn</u>
dealt with activity that was arguably inherently economic, the
same rational of focusing on aggregate effects is appropriate
where the regulated activity is not itself regarded traditionally
as commerce.  <u>See</u> <u>Gonzales</u> v. <u>Raich</u>, 545 U.S. at 17 (citing
<u>Wickard</u> v. <u>Filburn</u>, 317 U.S. at 125).  Indeed, the Supreme Court
in <u>Morrison</u> recognized that there is no "categorical rule against
aggregating the effect of any non-economic activity." <u>United</u>
<u>States</u> v. <u>Morrison</u>, 529 U.S. at 613.  In <u>Raich</u> the Supreme Court
was even clearer:

> [E]ven if appellee's activity be local and though it
> may not be regarded as commerce, it may still, <u>whatever</u>
> <u>its nature</u>, be reached by Congress if it exerts a
> substantial economic effect on interstate commerce.  We
> have never required Congress to legislate with
> scientific exactitude.  When Congress decides that the
> 'total incidence' of a <u>practice</u> poses a threat to a
> national market, it may regulate the entire class.

<u>Gonzales</u> v. <u>Raich</u>, 545 U.S. at 17 (2005)(citations and internal
quotation marks omitted)(emphasis added).  The "practice" that
Congress sought to regulate in Section 16913 was not merely a sex
offender's duty to register, but rather must be viewed as a sex
offender's duty to register in the context of a failing patchwork
of state laws, each of which prescribed different registration
requirements.  Moreover, courts do not need to determine whether
the aggregate of the regulated activities <u>in fact</u> substantially
affects interstate commerce; rather only whether a rational basis
exists for concluding so.  <u>Id.</u> at 22.  Simply put, requiring sex

17

offenders to comply with different registration standards in each state – as was the practice before SORNA - had a potentially adverse effect on interstate commerce, as so many of those sex offenders would travel interstate and slip through the cracks created by a lack of uniformity.

Considering this particular issue, the District Court for the Southern District of California, in United States v. Passaro, No. 07-cr-02308-BEN, at 10-11 (S.D. Cal. Dec. 17, 2007), found Section 16913 to be a valid exercise of Congress's Commerce Clause Power. Passaro acknowledged that Section 16913 itself does not contain a jurisdictional element or regulate economic activity, yet stressed that the statute is both part of a larger regulatory scheme, and also has a substantial connection to interstate commerce. Id. at 7, 9. The court explained:

> Congress intended (in enacting SORNA) to protect public safety. It is rational to conclude that maintaining a comprehensive national registry of sex offenders affects interstate commerce. For individuals engaging in any commerce-related activity, personal safety and safety of their families is a prime concern. Economic development in certain areas may be encouraged or discouraged depending on the safety level. Requiring sex offenders to register within three days of a change in residence is a means reasonably adapted to achieving SORNA's purpose.

CR 07-2308-BEN, at 9.

The Passaro court's reliance on the fact that the challenged Registration Requirements are part of a larger regulatory scheme is well grounded in Supreme Court jurisprudence. In Lopez, for

18

example, the Supreme Court specifically noted that the criminal statute in question stood alone.  See United States v. Lopez, 514 U.S. at 561.  In Raich, by contrast, the challenged portion of the statute "was merely one of many 'essential part[s] of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated.'"  Gonzales v. Raich, 545 U.S. at 24-25 (quoting Lopez, 514 U.S. at 561).  The same can be said here.  As discussed more fully in Parts I(B) & II, infra, the Registration Requirements were a necessary part of Congress's effort to police the interstate travel of non-compliant sex offenders, an effort that is clearly within Congress's power.

It should be noted that a district court in Montana recently dismissed an indictment that charged a violation of Section 2250 upon concluding that Congress exceeded its power in passing Section 16913.  See United States v. Waybright, -- F. Supp. 2d --, No. 08 Cr. 16 (DWM), 2008 WL 2380946 (D. Mont. June 11, 2008) (Notice of Appeal filed by United States on July 7, 2008).[4]  In particular, the court stressed that Section 16913 did not regulate activity that was economic in nature, had no express jurisdictional element, and was not supported by any legislative findings to show an effect on interstate commerce.  The court

---

[4] The decision in Waybright was issued on June 11, 2008, and, accordingly, is understandably not addressed in the defendant's initial brief, which was filed the day before, on June 10, 2008.

acknowledged that "[t]racking sex offenders may enhance public safety and may in turn promote a more productive economy as explained by the court in _Passaro_." _United States_ v. _Waybright_, 2008 WL 2380946, at *8.  Nevertheless, it concluded that "any effect on interstate commerce from requiring sex offenders to register is too attenuated to survive scrutiny under the Commerce Clause."  _Id._

Contrary to _Waybright_'s ruling, a sex offender's duty to register does have a substantial effect on interstate commerce, and Section 16913 was thus properly enacted.  The court in _Waybright_ effectively applied too strict a standard, failing to recognize that Congress can regulate intrastate activity where there is a _rational basis_ to conclude that intrastate activity has an aggregate effect on interstate commerce.  _Gonzales_ v. _Raich_, 545 U.S. at 17, 22.  It is not enough to argue that, simply because Section 16913 facially extends to sex offenders who do not travel interstate, the conduct it regulates does not have a substantial effect on interstate commerce.  As noted by another court addressing the constitutionality of Section 16913, one must remember that we live in a very mobile society.  _See_ _United States_ v. _Thomas_, 534 F. Supp. 2d 912, 922 (N.D. Iowa 2008) (citing _Kiowa Tribe of Okla._ v. _Mfg. Techs., Inc._, 523 U.S. 751, 758 (1998)).  Indeed, that mobility made SORNA a necessary step toward remedying a problem that defied local solution.  _See_ _generally_ _United States_ v. _Reynard_, 473 F.3d 1008, 1023-24 (9th

Cir. 2007) ("Courts have consistently recognized that federal statutes enacted to help states address problems that defy a local solution constitute an appropriate exercise of Congress's Commerce Clause power . . . ."); <u>United States</u> v. <u>Sage</u>, 92 F.3d 101 (2d Cir. 1996) (upholding, against Commerce Clause challenge, statute criminalizing willful failure to pay past child support obligations for child residing in another state).

Simply put, the rational basis test is met here. Congress clarified a sex offender's obligation by creating a national standard. This registration requirement is rationally related to SORNA's goal of preventing sex offenders from going missing in a patchwork of state laws as they travel between states and should therefore be upheld as a proper exercise of Congress's Commerce Clause Power.

### B. Necessary and Proper Clause

The Registration Requirements of Section 16913 can also be upheld under Congress's Necessary and Proper Clause Power. The Necessary and Proper Clause gives Congress the power to "make all Laws which shall be necessary and proper for carrying into Execution the [Congressional] Powers" enumerated in the Constitution, and "all other Powers vested by [the] Constitution in the Government of the United States." U.S. Const. art. I, § 8, cl. 18. Congress can exercise its Necessary and Proper Power when the means chosen are reasonably adapted to achieve

legitimate ends under the commerce power. See Gonzales v. Raich, 545 U.S. at 37 (citing United States v. Darby, 312, U.S. 100, 121 (1941)). This power is factually similar, though doctrinally distinct, from Congress's power to regulate activity that substantially affects interstate commerce.[5]

In United States v. Darby, 312 U.S. 100, the Supreme Court upheld an intrastate requirement that employers keep employment records to demonstrate compliance with a regulatory scheme, under Congress's Necessary and Proper Power. Here, the larger regulatory scheme is SORNA, and the legitimate end is to decrease the number of sex offenders who are able to go missing after traveling interstate and falling into the gaps that existed among states' sex offender registries. It is precisely this travel between states that led to the states' failure adequately to keep track of sex offenders. See United States v. Ditomasso, 552 F. Supp. 2d 233, 2008 WL 1994866, at *10 (D.R.I. 2008) ("SORNA, including the criminal component, prevents sex offenders from being lost in the cracks between state regulations, a matter which is beyond the power of any one state to comprehensively address.")(emphasis in original). SORNA is Congress's good faith effort to combat this problem, and the national registration

---

[5] Indeed, Justice Scalia, in his concurring opinion in Raich, argues that Congress's ability to regulate intrastate activity comes from the Necessary and Proper Clause and not the Commerce Clause. Gonzales v. Raich, 545 U.S. at 34 (Scalia, J., concurring).

system, provided in 42 U.S.C. § 16913, is a necessary step toward
carrying out that goal.  See United States v. Thomas, 534 F.
Supp. 2d at 922 ("Congress must be afforded the opportunity to
use its discretion . . . . , with respect to means by which [its]
powers . . . are to be carried into execution . . . in the manner
most beneficial to the people." )(quoting McCulloch v. Maryland,
17 U.S. (4 Wheat.) at 421 (1819)).  Without a national standard,
criminal prosecution was ineffective because non-compliant sex
offenders could claim a lack of notice of specific registration
requirements upon moving to new states.  See generally Karen S.
Schuller, North Carolina v. Bryant: Paving the way for a
comprehensive national sex offender registry, 30 N.C. Cent. L.
Rev. 75 (2007) (discussing problem of sex offenders claiming lack
of notice prior to creation of uniform standards).

In United States v. Thomas, a district court in the Northern
District of Iowa upheld Section 16913 as a proper exercise of
Congress's Necessary and Proper Clause Power because it is an
appropriate and reasonable means to attain the legitimate end of
monitoring sex offenders who cross state lines through Section
2250.  534 F. Supp. 2d at 921.  Thomas notes that the criminal
provision, Section 2250, is limited to apply only to sex
offenders who are required to register and travel in interstate
commerce.  See id. at 922. (citing 18 U.S.C § 2250(a)); United
States v. Pitts, No. 07-157-A, 2007 WL 3353423, at *4 (M.D. La.
Nov. 7, 2007) (upholding SORNA against constitutional challenge).

Thomas further emphasizes that: "Congress has deemed sex offenders to be inherently dangerous, a threat to public safety in themselves and deserving of extensive monitoring through SORNA's registration requirements."  534 F. Supp. 2d at 919.

The district court in Waybright rejected this analysis.  See United States v. Waybright, -- F. Supp. 2d -- , 2008 WL 2380946. Waybright stated that the Registration Requirements of Section 16913, which facially apply to offenders who remain instate, are not necessary to Congress's goal of regulating sex offenders who travel in interstate commerce.  Waybright also concluded that Section 16913 is not an essential part of a larger regulatory system because Section 16913 "is not a means to an end; it is the end of SORNA."  Id. at *10.  Thus, Waybright held that Section 16913 is not a legitimate exercise of Congress's Necessary and Proper Power.

Waybright is in error.  The question is not whether the Registration Requirements were absolutely necessary to Congress's goal of criminalizing the interstate travel of non-reporting sex offenders.  Nor is the question whether another statute could have been more narrowly tailored to achieve the same goal. Rather the Constitution requires only that the means are "reasonably adapted" to achieve legitimate ends.  See Gonzales v. Raich, 545 U.S. at 37.  Once again, "Congress must be afforded the opportunity to use its discretion . . . . , with respect to

means by which [its] powers . . . are to be carried into execution . . . in the manner most beneficial to the people." United States v. Thomas, 534 F. Supp. 2d at 922 (quoting McCulloch v. Maryland, 17 U.S. (4 Wheat.) at 421). The Registration Requirements are reasonably adapted provisions, implemented to facilitate the creation of criminal penalties for those non-registering sex offenders who travel in interstate commerce. Recognizing this, the court in Thomas concluded that Section 16913 was not narrowly tailored or absolutely necessary, yet nonetheless held Section 16913 constitutional because it is a reasonable provision to achieve SORNA's end. United States v. Thomas, 534 F. Supp. 2d at 922.

Furthermore, Waybright relied on a misguided conclusion that the Registration Requirements of Section 16913 are not a part of a larger regulatory scheme. Section 16913 is only one provision of SORNA, the larger regulatory scheme. It is similarly unsubstantiated to suggest - as Waybright does - that Congress's sole purpose in enacting SORNA was to create a national registration requirement, and not at all to regulate sex offenders who fail to register and travel in interstate commerce as set out in Section 2250. Before SORNA, sex offenders were required to register in every state, but their mobility rendered those laws ineffective. Congress enacted SORNA to solve the problem that missing sex offenders posed by setting out clear standards and enforcement provisions. As discussed above,

25

Section 16913, and likewise the criminal provision Section 2250 are both integral parts of the larger SORNA system.

In sum, Section 16913 is a reasonable component of SORNA, which is rationally related to Congress's goal of criminalizing interstate travel by sex offenders who fail to notify sex offender registries of their whereabouts.  For all the reasons stated above, Section 16913 is a proper Congressional enactment under the Necessary and Proper Clause.

**II.   SECTION 2250 DOES NOT VIOLATE THE COMMERCE CLAUSE.**

Title 18, United States Code, Section 2250, the criminal provision of SORNA under which the defendant is charged, was also properly passed by Congress.  The defendant claims that Section 2250 does not fall into one of the three broad categories where Congress may properly enact legislation under its Commerce Clause Power as defined in Lopez and Morrison.  Again, the three categories are: (1) to regulate use of the channels of interstate commerce; (2) "to protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) to regulate activities having a substantial effect on interstate commerce.  Lopez, 514 U.S. at 558-59.

Section 2250 falls directly into the second Lopez category of regulating persons in interstate commerce.  It focuses on movement of potentially dangerous people between the states, and

26

provides both the rational basis and interstate nexus the Court found lacking in <u>Lopez</u> and <u>Morrison</u>.  The defendant's reliance on <u>Lopez</u> and <u>Morrison</u> is misplaced here because, unlike the statutes at issue in <u>Lopez</u> and <u>Morrison</u>, Section 2250 has a jurisdictional element to the offense.  Section 2250 applies only to a sex offender who "travels in interstate or foreign commerce."  This distinction is far "more than cosmetic," <u>United States</u> v. <u>Utesch</u>, No. 07-CR-105, 2008 WL 656066, at *14 (E.D. Tenn. Mar. 6, 2008), and underscores Section 2250's constitutionality.

The defendant's suggestion that there is an insufficient nexus required under Section 2250 between a defendant's interstate travel and the substantive offense conduct is without merit.  The defendant is attempting to graft a limitation onto Congress's ability to regulate persons or things in interstate commerce by stating that the travel must be connected to some intent to commit a crime.  Yet the second <u>Lopez</u> category requires no such link.  <u>See</u> <u>United States</u> v. <u>Ditomasso</u>, 552 F. Supp. 2d 233, 2008 WL 1994866, at *10 (D.R.I. 2008) (stating that there is no requirement that the second type of activity be accompanied by an intent to commit a crime and noting that "a plethora of statutes lacking an element of intent have been [held to be] constitutional" regulations of the second type of activity).

Even beyond falling into the second <u>Lopez</u> category, Section 2250 can also be justified under the third <u>Lopez</u> category

because, largely for the reasons set forth above in the context of the Registration Requirements, it has a substantial effect on interstate commerce. See, e.g., United States v. Holt, No. 07-cr-0630-JAJ, 2008 WL 1776495, at *3 (S.D. Iowa Apr. 14, 2008) ("A rational basis exists for concluding that the activity regulated by SORNA substantially affects interstate commerce."); Utesch, 2008 WL 656066, at *14 ("It is beyond any reasonable argument that sex crimes, especially those perpetrated upon children, have a substantial economic relationship to interstate commerce."); United States v. Dixon, No. 07-CR-72(01) RM, 2007 WL 4553720, at *5 (N.D. Ind. Dec. 18, 2007). As long as there is a "rational basis" to conclude that the activity substantially affects interstate commerce, Congress can regulate the activity under the Commerce Clause, Gonzales v. Raich, 545 U.S. at 22, and a rational basis clearly exists here to conclude that sex offenders who travel in interstate commerce (particularly in an era of ineffective registry laws) do substantially affect interstate commerce.

The defendant further argues that Section 2250 would allow Congress to make a federal crime out of every local travel made at some point in the defendant's life. This argument is specious. The statute does not purport to extend federal jurisdiction to every sex offender in the SORNA categories who has traveled interstate at some point in his or her life. Moreover, even if Section 2250 were interpreted, however

28

implausibly, so broadly as to reach cases in which the defendant traveled interstate only prior to conviction for the SORNA registration offense, it would still be valid as applied in the present case, because defendant did travel in interstate commerce numerous times following his conviction for an offense for which 42 U.S.C. § 16913(a) requires him to register and keep the registration current "in each jurisdiction where the offender resides." See supra, Part I (explaining why defendant's challenge could be rejected on overbreadth grounds).

The defendant cites United States v. Powers, which, to the Government's knowledge, is the only district court opinion in the United States finding a violation of the Commerce Clause on these grounds. 544 F. Supp. 2d 1331 (M.D. Fla. Apr. 18, 2008). The opinion in Powers is remarkable not only because it is the only district court opinion on the subject finding a violation, but also because it barely even acknowledges, let alone discusses, Congress's authority to regulate anything other than activities that substantially affect interstate commerce. In fact, the Powers opinion laconically considers and summarily discards the possibility that Congress could regulate the interstate migration of convicted sex offenders using the channels of interstate commerce with just two sentences: "Here, we are clearly not dealing with the regulation of channels or instrumentalities of commerce. Nor are we dealing with the regulation of persons or things in interstate commerce." Powers, 544 F. Supp. 2d at 1333-

34.  How such a conclusion is so clear, particularly in light of the numerous district courts that have concluded otherwise, is not explained in <u>Powers</u>.

It should be noted that, following <u>Powers</u>, the United States District Court for the Middle District of Florida was again presented with a Commerce Clause objection similar to the one made in <u>Powers</u>.  In fact, the objection in <u>United States</u> v. <u>Mason</u>, No. 07-cr-52-Or1-19GJK, 2008 WL 1882255, at *1 (M.D. Fla. Apr. 24, 2008), was premised upon the specific argument and holding in <u>Powers</u>.  In <u>Mason</u>, however, the objection was rejected.  <u>See</u> <u>United States</u> v. <u>Mason</u>, 2008 WL 1882255, at *1-3.  In failing to be persuaded by either the rationale or holding of <u>Powers</u>, the court in <u>Mason</u> observed that <u>Powers</u> failed to consider Congress's ability to regulate persons or things that travel in interstate commerce regardless of whether the particular activity regulated has a substantial effect on interstate commerce.  <u>Id.</u> at *1-3.  In fact, the court in <u>Mason</u> explained that <u>Powers</u> "gave only cursory treatment of the reasoning of this Court and a number of others that have upheld SORNA's constitutionality: that the enactment of SORNA was a valid use of Congress' power to 'protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities.'" <u>United States</u> v. <u>Mason</u>, 2008 WL 1882255, at *2.  In light of <u>Powers</u>'s cursory treatment of Congress's ability to

regulate persons or things in interstate commerce, the opinion should have no more persuasive effect in this district than it has in the district within which it was issued.  See also Ditomasso, 552 F. Supp. 2d 233 (refusing to follow Powers).

Along with Mason and Ditomasso, there are many district courts throughout the nation that have examined and rejected the defendant's Commerce Clause arguments against Section 2250.  See, e.g., United States v. David, No. 08CR11, 2008 U.S. Dist LEXIS 38613 (W.D.N.C. May 12, 2008); United States v. Craft, No. 07CR3168, 2008 WL 1882904 (D. Neb. Apr. 23, 2008); United States v. Akers, No. 07-CR-00086(01)RM, 2008 WL 914493, at *2-3 (N.D. Ind. Apr. 3, 2008); Untied States v. Thomas, 534 F. Supp. 2d at 917-922 [N.D. Iowa];  United States v. Elliott, No. 07-14059-CR, 2007 WL 4365599, at *7 (S.D. Fla. Dec. 13, 2007); United States v. Adkins, No. 07-CR-59, 2007 WL 4335457 (N.D. Ind. Dec. 7, 2007); United States v. Cardenas, 2007 WL 4245913 [S.D. Fla.]; United States v. Pitts, 2007 WL 3353423 [M.D. La.]; United States v. Ambert, No. 07-CR-053-SPM, 2007 WL 2949476, at *4 (N.D. Fla. Oct. 10, 2007);  United States v. Beasley, No. 07-CR-115-TCB, 2007 WL 3489999 (N.D. Ga. Oct. 10, 2007); United States v. May, Nos. 07-cr-00164-JEG, 07-cr-00059-JEG, 2007 WL 2790388 (S.D. Iowa Sept. 24, 2007); United States v. Kelton, No. 07-cr-30-Oc-10GRJ, 2007 WL 2572204 (M.D. Fla. Sept. 5, 2007); United States v. Gonzalez, No. 07cr27-RS, 2007 WL 2298004 (N.D. Fla. Aug. 9, 2007); United States v. Lang, No. CR-07-0080-HE, 2007 U.S. Dist.

LEXIS 56642 (W.D. Okla. June 5, 2007); <u>United States</u> v. <u>Templeton</u>, No. CR-06-291-M, 2007 WL 445481, at *3-4 (W.D. Okla. Feb. 7, 2007); <u>United States</u> v. <u>Hinen</u>, 487 F. Supp. 2d 747, 757-58 (W.D. Va. 2007).

In sum, Congress has authority to regulate persons in interstate commerce and properly did so with Section 2250. _ Accordingly, Your Honor should deny the defendant's Commerce Clause challenge to 18 U.S.C. § 2250.

### III. THE STATUTE DOES NOT VIOLATE DUE PROCESS.

The defendant argues that the Indictment violates due process because it was impossible for him to comply with the Registration Requirements of SORNA given that neither New York nor Alabama had yet revised its sex offender registration laws in response to SORNA at the time of his offense. This argument fails because the defendant is not excused of his obligation to register in a state on the grounds that the state has not implemented the detailed provisions of the SORNA registry. SORNA simply requires that a person convicted of a sex offense register, and keep the registration current, in each jurisdiction where the offender resides, works, or is a student. 42 U.S.C. §16913(a). Under a plain reading of the statute, the defendant, who is a convicted sex offender, is a person required to keep a current his registration under SORNA.

Congress did not intend to make the SORNA requirement applicable only after a given state implemented the suggested

SORNA requirements.  Under SORNA, states are to implement registries before July 27, 2009, with the possibility of up to two one-year extensions, see 42 U.S.C. § 16924; but Congress did not intend to suspend the Registration Requirement in the meantime.  Prior to the defendant's travel in this case, the Attorney General published an interim rule in 28 CFR Part 72, pursuant to the authority under SORNA section 113(d) to "specify the applicability of the requirements of [SORNA] to sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction."  42 U.S.C. § 16913(d).  The Attorney General's interim regulations sensibly made clear that the statute applies to individuals who were convicted of their qualifying sex offenses prior to the enactment of SORNA, and required them to register with a given state regardless of whether that state had yet amended its local laws to mirror SONRA's national standards.  In other words, the applicability of the SORNA Registration Requirements and the criminal penalties under Section 2250 are not contingent on a jurisdiction's implementation of a conforming registration program.

The defendant concedes that both New York and Alabama have sex offender registries in place, that predate SORNA, and it was thus possible to comply with the Registration Requirements at the time of his offense.  Indeed, immediately before beginning the interstate travel at issue in this case, the defendant had maintained a registration in Alabama, as required by SORNA.  See

33

United States v. Pitts, 2007 WL 3353423 (compliance does not
require the offender to register in a jurisdiction that has
enacted legislation complying with SORNA); United States v.
Beasley, 2007 WL 3489999 (same); United States v. Adkins, 2007 WL
4335457. Compliance was plainly not impossible.

The defendant does not cite a case in support of this
position, but there are numerous decisions to the contrary. See,
e.g., United States v. Utesch, 2008 WL 656066, at *8 [E.D.
Tenn.]; United States v. Hester, No. 07-CR-376, 2008 WL 351677
(N.D.N.Y. Feb. 7, 2008); United States v. Adkins, 2007 WL 4335457
[N.D. Ind.]; United States v. Manning, No. 06-20055, 2007 WL
624037 (W.D. Ark. Feb. 23, 2007); United States v. Gould, 526 F.
Supp. 2d 538, 542-44 (D. Md. 2007). Accordingly, the Indictment
should not be dismissed on these grounds.

## IV.   THE STATUTE DOES NOT VIOLATE THE TENTH AMENDMENT.

SORNA is not an impermissible encroachment upon state power
in violation of the Tenth Amendment to the Constitution, which
provides that, "powers not delegated to the United States by the
Constitution, nor prohibited by it to the States, are reserved to
the States respectively or to the people." U.S. Const. amend X.

First, the defendant does not have standing to assert this
claim because he has suffered no injury. See Lujan v. Defenders
of Wildlife, 504 U.S. 555, 560 (1992) (requiring causal
connection between injury and conduct complained of to assert
standing). On this basis alone, his challenge should be

rejected.  See United States v. Craft, 2008 WL 1882904, at *22;
United States v. Beasley, 2007 WL 3489999, at *10.  To the extent
SORNA's requirements are directed at states, they do not impose
an additional burden on the defendant.  Alabama and New York have
their own sex offender registration requirements, and were
encouraged by SORNA to modify them to comply with new uniform
standards.  These provisions of SORNA did not require the
defendant to do anything he was not already required to do under
state law.  The defendant, who had to register either way under
the state, suffered no injury as a result of Congress's alleged
commandeering of state officials.

     Second, the defendant's Tenth Amendment challenge is without
merit.  Simply put, SORNA criminalizes interstate travel by
persons who are required to register and fail to do so; it does
not force state officials to do anything contrary to the Tenth
Amendment.  In examining federal Acts for Tenth Amendment
infirmity, the Supreme Court has focused on whether states and
state officials are commandeered to carry out federal regulatory
schemes.  See McConnell v. Federal Election Com'n, 540 U.S. 93,
186 (2003).  While SORNA does offer incentives to states to amend
their existing registration laws in compliance with SORNA, see,
e.g., 42 U.S.C. § 16925, it does not force or constrict the
states to do anything more than what each state has already done

in passing their own sex offender registration laws.[6]  In fact,
SORNA expressly disavows any such mandate.  See 42 U.S.C.
§ 16925(d).  In Printz v. United States, a case cited by the
defendant in support of his argument, the Supreme Court held that
a law requiring local law enforcement to execute federal law was
improper.  521 U.S. 898 (1997) (considering law specifically
requiring state and local officials to conduct background checks
in connection with firearms purchases).  SORNA is not compelling
local law enforcement to do anything, but instead provides
monetary incentives to amend existing laws to be in accordance
with SORNA.  Congress is allowed to provide monetary incentives
to states upon fulfillment of federal statutory directives.  See
New York v. United States, 505 U.S. 144 (1992); see also South
Dakota v. Dole, 483 U.S. 203, 206-07 (1987) (Congress
constitutionally conditioned federal highway funds on state
implementation of minimum drinking age).

    Notably, the defendant does not cite a single case in which
an indictment charging a violation of Section 2250 has been
dismissed on a Tenth Amendment challenge.  To the contrary,

---

[6]To the extent the defendant argues that the Registration
Requirements themselves impermissibly "force the state officials
who run the local registries to accept federally required sex
offender registrations before their state chooses to adopt the
SORNA provisions voluntarily," Def.'s Br. 21, there is no such
explicit requirement and, in any event, it would not be
impermissible given the minimal added duty such a requirement
would impose on the states, each of which already had in place a
sex offender registry.

numerous courts have rejected this argument.  See, e.g., United States v. Gould, 526 F. Supp. 2d 538, 549 (D. Md. 2007); United States v. Pitts, 2007 WL 3353423, at *8-9; United States v. Cardenas, 2007 U.S. Dist. LEXIS 88803; United States v. Beasley, 2007 WL 3489999.

### V.    THE STATUTE DOES NOT VIOLATE THE NON-DELEGATION DOCTRINE.

Finally, the implementation process of SORNA did not violate principles of non-delegation.  In passing SORNA, Congress requested assistance from the Attorney General in determining how it should be applied to previously convicted sex offenders.  The defendant incorrectly claims that this was an unconstitutional delegation of legislative authority.

The Supreme Court has concluded on only two occasions that Congress improperly asked for help from another branch of government.  See Mistretta v. United States, 488 U.S. 361, 373-74 (1989)(discussing history of non-delegation doctrine).  These cases, on which the defendant relies, were both in 1935, 71 years before SORNA became law.  In Panama Refining Co. v. Ryan, 293 U.S. 388 (1935), Congress's request for assistance was literally unaccompanied by any meaningful guidance, and in A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495 (1935), Congress's request was accompanied by a grant of authority to regulate the entire national economy.  Panama Refining and Schechter are not the progenitors of a long line of cases similarly truncating

37

broad congressional attempts to seek the assistance of other branches of government.  To the contrary, the legal opinions addressing non-delegation arguments that have followed <u>Panama Refining</u> and <u>Schechter</u> have treated those cases as boundary markers setting forth the extreme outer limits within which Congress may otherwise constitutionally act.  <u>See</u> <u>Mistretta</u>, 488 U.S. at 373-74.

The Supreme Court has explained that Congress may seek the assistance of another governmental branch by conferring upon it broad discretion to determine how to properly implement a particular statute as long as Congress provides an intelligible principle to guide the exercise of that discretion.  <u>See</u> <u>Touby</u> v. <u>United States</u>, 500 U.S. 160, 165 (1991).  In <u>Mistretta</u> the Supreme Court applied the intelligible principle standard in reviewing a broad and crucial grant of authority by Congress to the United States Sentencing Commission.  The grant of authority in <u>Mistretta</u> involved the discretion to determine the mandatory guideline sentencing ranges applicable to convictions for nearly all federal crimes.  <u>Mistretta</u>, 488 U.S. at 377-78.  In upholding the conferral of sweeping sentencing authority to the sentencing commission, the Supreme Court explained that Congress, in determining how its policy judgments can best be achieved, is not limited to the "method . . . which involves the least possible delegation of discretion to administrative officers." <u>Id.</u> at 379 (citation omitted).  In addition, the Court observed that "our

jurisprudence has been driven by a practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." Id. at 372.  The Supreme Court has recognized "that the separation of powers principle, and the non-delegation doctrine in particular, do not prevent Congress from obtaining the assistance of its coordinate Branches." Id.  Indeed, "[t]he Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its functions." Id. (citation omitted).

Ultimately, the Court concluded that the relatively open-ended grant of sentencing authority was not an unconstitutional delegation because Congress delineated three goals to accompany it: (1) "to assure the meeting of the purposes of sentencing as set forth in the [Sentencing Reform] Act"; (2) "to provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records . . . while maintaining sufficient flexibility to permit individualized sentences where appropriate"; and (3) "to reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process." Id. at 374.

In United States v. Gill, 520 F. Supp. 2d 1341, 1349 (D.

Utah 2007), the United States District Court for the District of Utah relied upon <u>Mistretta</u> in holding that Congress did not unconstitutionally delegate its legislative authority by giving the Attorney General the discretion to determine whether SORNA would apply to sex offenders convicted prior to its enactment. In doing so, the court pointedly remarked that "if Congress can delegate to another branch of government the authority to create a body of federal sentencing guidelines governing sentencing for all federal crimes, it can surely delegate the more modest issue of establishing an effective date for a sex offender registration statute." <u>Id.</u> at 1349.

The defendant argues that the Attorney General had no limitations nor guidance on this issue from Congress; but that is simply incorrect. Congress, in enacting SORNA and conferring discretion upon the Attorney General, clearly delineated SORNA's goal – the protection of "the public from sex offenders and offenders against children." 42 U.S.C. § 16901 ("Declaration of purpose"). This goal is an intelligible principle that serves as an effective guide to the Attorney General's implementation of SORNA. Furthermore, the plain language of several additional sections of SORNA guide the Attorney General's exercise of discretion relative to retroactivity, particularly the section, codified at 42 U.S.C. § 16911(1), that defines a "sex offender" as someone "who was convicted of a sex offense" without limitation as to when the crime or the conviction occurred.

SORNA, therefore, contains an intelligible principle (if not a clear legislative directive) relative to retroactivity such that no unconstitutional delegation of legislative authority occurred.

SORNA's legislative history also supports such a conclusion. Consider the statement made by Senator Orrin Hatch, a co-sponsor of the bill that became the Adam Walsh Act, to his colleagues in the Senate:

> There are more than a half-million registered sex offenders in the United States. Those are the ones we know. Undoubtedly there are more. That number is going to go up. Over 100,000 of those sex offenders are registered but missing. That number is going to go down. We are going to get tough on these people. Some estimate it is as high as 150,000 sex offenders who are not complying. That is killing our children.

152 Cong. Rec. S8012, 8013 (daily ed. July 20, 2006) (statement of Sen. Hatch).  This statement is consistent with the statements of other members of Congress, including those of Representative James Sensenbrenner, a sponsor of the bill in the House of Representatives:

> There are over a half million sex offenders in the United States and up to 100,000 offenders are unregistered and their locations unknown to the public and law enforcement. [This bill] contains strict national offender registration and data sharing requirements to ensure that law enforcement agencies and America's communities know where sex offenders live and work.

152 Cong. Rec. H5705, 5722 (daily ed. July 25, 2006) (statement of Rep. Sensenbrenner).

While legislative history may not always be an entirely accurate guide to the meaning of statutory text, one must,

nevertheless, conclude that such statements from sponsors of the
legislation reflect a clear congressional intent to begin to
remedy the existing situation effectively and immediately.  In
fact, it would have been incredibly odd for Congress to be
inspired by the need for such remedial action and then enact
legislation that did not apply to the over 100,000 "missing" sex
offenders.

Congress's delegation of authority to the Attorney General
in this case is not unlike the myriad of situations where
Congress has enacted legislation and a federal agency passes
rules and regulations implementing the statute.  Here, SORNA
clearly defines what conduct is proscribed, and the Attorney
General's February 28, 2007 Interim Rule determining its
retroactivity to certain offenders convicted before SORNA's
enactment was a sensible implementation of Congress's mandate.
See United States v. Samuels, 543 F. Supp. 2d 669, 678 (E.D. Ky.
2008).

The defendant cites United States v. Madera, where the
Eleventh Circuit dismissed an indictment in a unique case where
the offense conduct fell in a period of time between SORNA's
enactment and the Attorney General's retroactivity determination.
No. 07-12176, 2008 U.S. App. LEXIS 11078 (11th Cir., May 23,
2008).  But that is inapplicable here, where all of the charged
conduct occurred after the Attorney General passed the interim
rule stating that SORNA was to apply retroactively to anyone

convicted of a sex offense, regardless of when that offense took place.  See 28 C.F.R. § 72.3.

Indeed, numerous courts considering this non-delegation constitutional challenge outside the unique circumstances presented by Madera have rejected the challenge.  See United States v. Akers, 2008 WL 914493, at *4 [N.D. Ind.]; United States v. Utesch, 2008 WL 656066, at *10 [E.D. Tenn.]; United States v. Hacker, No. 07CR243, 2008 WL 312689, at *3 (D. Neb. Feb. 1, 2008); Samuels, 543 F. Supp. 2d 669; United States v. LeTourneau, No. B-07-855, 2008 WL 112105, at *6 (S.D. Tex. Jan. 9, 2008); United States v. Hinen, 487 F. Supp. 2d at 753 [W.D. Va.]; United States v. Ambert, 2007 WL 2949476, at *7 [N.D. Fla.]; United States v. Lovejoy, 516 F. Supp. 2d 1032, 1034-36 (D.N.D., 2007); United States v. Mason, 510 F. Supp. 2d 923, 927-28 (M.D. Fla. 2007).  This court should do the same.

**CONCLUSION**

Based on the argument and authority set forth above, the United States respectfully requests this court deny the defendant's Motion to Dismiss the Indictment.


Dated:    New York, New York
          July 24, 2008


                              Respectfully submitted,

                              MICHAEL J. GARCIA
                              United States Attorney


                         By:  /s/ Mark Lanpher
                              MARK LANPHER
                              Assistant United States Attorney
                              (212) 637-2399

1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   UNITED STATES OF AMERICA,                    CASE NO. 07-CR-2308 BEN

12                            Plaintiff,           ORDER:

13          vs.                                    (1) DENYING DEFENDANT'S
                                                   MOTION TO DISMISS
14                                                 INDICTMENT;

15   MATTHEW TEVIS PASSARO,                        (2) GRANTING DEFENDANT'S
                                                   MOTION FOR LEAVE TO FILE
16                            Defendant.           FURTHER MOTIONS

17                                                 [Doc. ## 26, 27]

18

19                              **I. INTRODUCTION**

20          On August 22, 2007, a federal grand jury returned a single count indictment charging

21   Defendant  Matthew Tevis Passaro ("Defendant" or "Passaro") with failing to register as a sex

22   offender in violation of § 2250(a) of the Sex Offender Registration and Notification Act

23   ("SORNA"). 18 U.S.C. § 2250(a). Defendant pleaded not guilty.

24          Defendant now moves to dismiss the indictment on seven different grounds. The

25   prosecution opposes the motion. For the reasons below, Defendant's motion is denied.

26                              **II. BACKGROUND**

27          The following facts are taken from the Complaint. [Doc. # 1]. On October 22, 2002,

28   Defendant pleaded guilty to sexual assault in the second degree in violation of N.J. Stat. § 2C:14-

2c(4) ("the underlying offense").  The underlying offense arose from Defendant having sexual

relations with a fifteen-year-old girlfriend in July 2001.  Defendant was 29 years old at the time.

The indictment filed in Union County, New Jersey, charged Defendant with sexual assault,

criminal sexual conduct, endangering the welfare of a child and terroristic threats.

On April 2, 2004, Defendant was sentenced to credit for time served of 583 days and five

years of probation.  On May 3, 2004, Defendant signed the terms and conditions of his release.

One of the conditions was Passaro's registration as a sex offender.

On April 17, 2006, Defendant signed a fingerprint card marked "sex offender."  The card

was part of the New Jersey registration requirements and stated that Defendant was a sex offender

who needed to "advise/register [with] the local/State police when I change my registration

address."  Defendant had not signed the card until after his probation officer filed a citation notice

in March 2006 indicating that Defendant was not in compliance with the registration requirements.

The probation officer also personally explained to Defendant how to comply with the registration

requirements and suggested that Defendant register as a transient under New Jersey law.

On November 16, 2006, the probation officer sought a warrant for Defendant's arrest

because the latter's whereabouts had been unknown since June 6, 2006.  On January 5, 2007, the

New Jersey Superior Court issued a do-not-extradite bench warrant for the probation violation.

The warrant remains active.

On July 26, 2006, Defendant was arrested in New York for possession of a controlled

substance and sentenced to two days of community service.  On January 18, 2007, Defendant was

arrested for trespass in Las Vegas, Nevada.  In March 2007, Defendant was contacted by law

enforcement officers in San Diego, California on three separate occasions.

On March 6, 2007, Defendant was contacted by the San Diego Harbor Police.  Officers ran

a check on Passaro's criminal record and discovered he was a convicted sex offender who had not

registered in California.   Defendant stated that he had been in San Diego for over a week, but was

not planning to stay.  The officers informed Defendant that he needed to register under California

Penal Code § 290, if he had been in the state for more than five days.

On March 10, 2007, Defendant was issued a citation by the San Diego Police Department

07cr2308

1    for having an open alcohol container in a public park. Defendant gave an address of 1675 Garnet

2    Avenue in San Diego, California.

3         Defendant then traveled to Mexico and returned to California. On March 23, 2007, he was

4    again contacted by the San Diego Harbor Police on suspicion of having an open alcohol container.

5    The officers ran a criminal record check on Passaro. Defendant gave his name and stated that there

6    was a "non-extradite" warrant issued for him in New Jersey. He had been in San Diego for several

7    weeks but was planning to leave once he had enough money for a bus ticket. The San Diego

8    Harbor Police arrested Defendant for failure to register pursuant to California Penal Code § 290,

9    because he was previously notified on March 6, 2007 of his obligation to register but did not do so.

10   Defendant provided the address of a shelter located at 299 Seventeenth Avenue in San Diego. On

11   March 27, 2007, Defendant was released from jail because the officers realized that he had not

12   completed Form 8047, California's official notice to register as a sex offender. On March 27,

13   2007, Defendant completed and signed Form 8047 and affixed his fingerprint to it. To date,

14   Defendant has not registered in California.

15        Approximately a week after his release, Defendant traveled to Florida by bus and met his

16   current girlfriend. In July 2007, Defendant was apprehended in West Palm Beach, Florida,

17   pursuant to an arrest warrant from the Southern District of California after a routine traffic

18   violation. Defendant was then brought back to this District.

19        The superseding indictment alleges that the offense occurred between July 27, 2006 and

20   July 24, 2007. [Doc. # 11].

21                          **III. STATUTORY SCHEME AT ISSUE**

22        The Jacob Wetterling Act ("the Wetterling Act"), enacted on September 13, 1994, provides

23   federal funding to states which enacted sex offender registration laws commonly referred to as

24   "Megan's Law." *See* 42 U.S.C. § 14071, *et seq.* Although the Wetterling Act was primarily

25   regulatory in nature, it also provided criminal penalties for up to one year for the first offense and

26   up to ten years for subsequent offenses for sex offenders who failed to register in the state where

27   they resided, worked, or were a student. *See* 42 U.S.C. § 14072(i).

28        On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act ("the

1  Walsh Act"). Section 141 of the Walsh Act contains SORNA. SORNA requires a person

2  convicted of a sex offense to register and keep the registration current in each jurisdiction where

3  such person resides, works or is a student. 42 U.S.C. § 16913(a). In the event of a change of

4  name, residence or employment, the sex offender must appear in person within three days of the

5  change in at least one jurisdiction where this person resides, works or is a student, and inform the

6  jurisdiction of the changes in the information required for the registry. 42 U.S.C. § 16913(c).

7      Under § 16913(d) of SORNA,

8      The Attorney General shall have the authority to specify the applicability of the
       requirements of this subchapter to sex offenders convicted before July 27, 2006 or its
9      implementation in a particular jurisdiction, and to prescribe rules for the registration of any
       such sex offenders and for other categories of sex offenders who are unable to comply with
10     subsection (b) of this section.

11 *Id.* On February 28, 2007, the Attorney General promulgated an interim rule pursuant to

12 § 16913(d) of SORNA. Under the interim rule, "[t]he requirements of the Sex Offender

13 Registration and Notification Act apply to all sex offenders, including sex offenders convicted of

14 the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 72.3.

15     The criminal provision of SORNA imposes penalties of up to ten years of imprisonment on

16 individuals required to register a sex offenders, and who knowingly fail to register or update their

17 registration. 18 U.S.C. § 2250.

18     In California, the registration requirements are governed by California Penal Code § 290.

19 A sex offender is required to register within five working days of "coming into, or changing his or

20 her residence within, any city, county, or city and county." Cal. Penal Code § 290(b).

21                          **IV. DISCUSSION**

22     Defendant has failed to demonstrate that the indictment must be dismissed under Rule

23 12(b)(3). This Rule authorizes motions alleging a defect in the indictment or information, or

24 alleging that the indictment or information fails to invoke the court's jurisdiction or to state an

25 offense. *See* Fed. R. Crim. P. 12(3)(B). The Ninth Circuit has held that "a motion to dismiss is

26 generally 'capable of determination' before trial 'if it involves questions of law rather than fact.' '

27 *United States v. Nukida,* 8 F.3d 665, 669 (9th Cir. 1993). The sufficiency of the evidence cannot

28 be challenged under Rule 12(b). *See United States v. Jensen,* 93 F.3d 667, 669 (9th Cir. 1995)

1    (citation omitted).  Passaro's challenges are based on legal issues.  He does not dispute the factual

2    allegations in the indictment in his motion to dismiss.  Therefore no factual determinations are

3    made by this Court.

4         The seven separate grounds for dismissal asserted by Defendant are addressed in turn

5    below.  Statutes are presumed constitutional.  *See INS v. Chadha,* 462 U.S. 919, 944 (1983).  The

6    party challenging the statute "bears the burden of demonstrating its unconstitutionality.*"  Lujan v.*

7    *G & G Fire Sprinklers, Inc.,* 532 U.S. 189, 198 (2001).

8         As a preliminary matter, the Court notes that there is no Ninth Circuit precedent

9    determining these issues.  Numerous district courts from other jurisdictions, however, have faced

10   similar constitutional challenges and rejected most of them.

11        **A.    The Commerce Clause**

12             **1.    Section 2250**

13        The enactment of § 2250, the criminal penalty provision of SORNA, was a valid exercise

14   of congressional authority under the Commerce Clause.  The Commerce Clause grants Congress

15   the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with

16   the Indian Tribes."  U.S. Const. art. I, § 8, cl. 3.  This clause is followed by the Necessary and

17   Proper Clause which grants Congress the power "[t]o make all Laws which shall be necessary and

18   proper for carrying into Execution the foregoing Powers and all other Powers vested by this

19   Constitution...."  U.S. Const. art. I, § 8, cl. 18.  The Supreme Court has identified three categories

20   of activity that Congress may regulate under its commerce power: 1) "the channels of interstate

21   commerce;" 2) "the instrumentalities of interstate commerce or persons or things in interstate

22   commerce, even though the threat may come only from intrastate activities"; and 3) "those

23   activities having a substantial relation to interstate commerce."  *U.S. v. Lopez,* 514 U.S. 549,

24   558-59 (1995).

25        Defendant argues that section 2250 does not fall within any of the above three categories.

26   The prosecution asserts that the Act regulates persons in interstate commerce and activities that

27   have a substantial relation to interstate commerce.  (Govt.'s Opp. to Def.'s Mot. at 10).

28        Section 2250 applies to persons in interstate commerce by its very terms.  A fine or

1  imprisonment is imposed after a sex offender "travels in interstate or foreign commerce." 18

2  U.S.C. § 2250(a)(1)(B). Defendant has moved from state to state. This Court finds it significant

3  that Passaro also purchased a bus ticket for a commercial interstate bus line, thus directly engaging

4  in interstate commerce. Accordingly, Passaro traveled in interstate commerce. At the very least,

5  section 2250 is constitutional as applied to Defendant.

6      In addition, section 2250 regulates activities substantially related to interstate commerce.

7      [E]ven if appellee's activity be local and though it may not be regarded as commerce, it
       may still, whatever its nature, be reached by Congress if it exerts a substantial economic
8      effect on interstate commerce. We have never required Congress to legislate with scientific
       exactitude. When Congress decides that the 'total incidence' of a practice poses a threat to
9      a national market, it may regulate the entire class.

10 *Gonzales v. Raich,* 545 U.S. 1, 17 (2005) (citation omitted) (internal quotation marks omitted).

11 The courts do not need to determine "whether respondents' activities, taken in the aggregate,

12 substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so

13 concluding." *Id.* at 22.

14     The scope of the interstate commerce power, however, "must be considered in the light of

15 our dual system of government and may not be extended so as to embrace effects upon interstate

16 commerce so indirect and remote that to embrace them, in view of our complex society, would

17 effectually obliterate the distinction between what is national and what is local and create a

18 completely centralized government." *Lopez,* 514 U.S. ay 557 (citing *N.L.R.B. v. Jones & Laughlin*

19 *Steel Corp.,* 301 U.S. 1, 37 (1937). "The question is necessarily one of degree." *Jones & Laughlin*

20 *Steel Corp.,* 301 U.S. at 37.

21     The Supreme Court has looked at the following factors in deciding whether a federal statute

22 was a proper exercise of congressional authority under the Commerce Clause: (1) whether the

23 regulated activity is economic in nature; (2) whether the statute contains a jurisdictional element

24 which establishes "an explicit connection with or effect on interstate commerce;" (3) the existence

25 of express congressional findings regarding the effects of the regulated activity upon interstate

26 commerce; and (4) the link between the regulated activity and its substantial effect on interstate

27 commerce. *See id.* at 611-12. These factors support a conclusion that the enactment of § 2250

28 does not violate the Commerce Clause.

1      First, § 2250 does not appear to be economic in nature.  There is, however, no express

2  requirement that the regulated activity be apparently economic in nature.  When the challenged

3  statute is "merely one of many 'essential part[s] of a larger regulation of economic activity, in

4  which the regulatory scheme could be undercut unless the intrastate activity were regulated,'" the

5  Congress may legislate.  *See Raich,* 545 U.S. at 24-25.  The purpose of SORNA was to protect the

6  public from sex offenders.  *See* 42 U.S.C. §§ 16901, 16913.  The registration requirements and

7  disclosure of information regarding the sex offenders' identity and location protect anyone who

8  engages in interstate commerce.

9      Passaro heavily relies on the cases where the congressional authority to pass the laws under

10  the Commerce Clause was found lacking because the laws regulated intrastate non-economic

11  activity.  *See, e.g, U.S. v. Morrison,* 529 U.S. 598 (2000) (holding that the Commerce Clause did

12  not provide Congress with authority to enact civil remedy provision of the Violence Against

13  Women Act because the provision did not regulate activities that substantially affected interstate

14  commerce); *Jones v. U.S.,* 529 U.S. 848 (2000) (holding that an owner-occupied residence not

15  used for any commercial purpose does not qualify as property used in interstate or foreign

16  commerce or in any activity affecting interstate or foreign commerce within meaning of the federal

17  arson statute); *Lopez,* 514 U.S. 549 (holding that the Gun-Free School Zones Act exceeded

18  Congress's commerce clause authority, because the possession of a gun in local school zone was

19  not economic activity that substantially affected interstate commerce).

20        As an initial matter, the statutory challenges at issue in [*Morrison* and *Lopez*] were
markedly different from the challenge respondents pursue in the case at hand.  [In *Raich*],

21        respondents ask us to excise individual applications of a concededly valid statutory scheme.
In contrast, in both *Lopez* and Morrison, the parties asserted that a particular statute or

22        provision fell outside Congress' commerce power in its entirety.  This distinction is pivotal
for we have often reiterated that "[w]here the class of activities is regulated and that class is

23        within the reach of federal power, the courts have no power 'to excise, as trivial, individual
instances' of the class."

24

25  *Raich,* 545 U.S. at 23 (citations omitted).

26      In the present case, the challenged law, § 2250 is part of the larger Walsh Act, whose

27  validity is not disputed.  "When it is necessary in order to prevent an evil to make the law embrace

28  more than the precise thing to be prevented," Congress may do so.  *Id.* at 17 (internal quotation

07cr2308

1  marks and citation omitted).

2      Moreover, the Supreme Court  has not adopted "a categorical rule against aggregating the

3  effects of any noneconomic activity." *Morrison,* 529 U.S. at 613.  The highest court has only

4  required the activity to be economic in nature when it was purely intrastate.  *Id.*  Contrary to

5  Defendant's argument, the regulated activity is not "purely intrastate," because § 2250 criminalizes

6  failure to register only after interstate travel.  (Def.'s Mot. at 10).

7      Second, § 2250 contains the requisite jurisdictional element.  A sex offender must travel in

8  interstate or foreign commerce before a violation of § 2250 takes place and becomes punishable.

9  *See* 18 U.S.C. § 2250(a)(2)(B).  The penalty is imposed once the sex offender crosses state lines

10  and fails to register within the specified time period.  This is another reason why Defendant's

11  reliance on *Morrison* and *Lopez* is misplaced.  "The laws found to exceed the congressional

12  authority in [*Morrison* and *Lopez*] regulated purely intrastate activities without addressing

13  interstate travel." *Raich,* 545 U.S. at 23.

14      Third, although SORNA itself does not contain legislative findings regarding the effects of

15  travel of sex offenders upon interstate commerce, "Congress normally is not required to make

16  formal findings as to the substantial burdens that an activity has on interstate commerce."

17  *Morrison,* 529 U.S. at 612.  The Supreme Court stated that:

18      [W]e have never required Congress to make particularized findings in order to legislate,
        absent a special concern such as the protection of free speech.  While congressional

19      findings are certainly helpful in reviewing the substance of a congressional statutory
        scheme, particularly when the connection to commerce is not self-evident, and while we

20      will consider congressional findings in our analysis when they are available, the absence of
        particularized findings does not call into question Congress' authority to legislate.

21

22  *Raich,* 545 U.S. at 21 (citations omitted).  Also, other parts of the Walsh Act, namely Title V

23  entitled "Child Pornography Prevention," are supported by such findings.  Congress found that

24  interstate transportation or distribution of child pornography has a substantial and direct effect

25  upon interstate commerce.  H.R. 4472, 109th Cong. (2nd Sess. 2006).  This is further evidence of

26  SORNA being part of a larger regulation of economic activity.

27      Fourth, there exists a link between the regulated activity and its substantial effect on

28  interstate commerce.  For example, as stated above, distribution of pornographic materials has

1   been found to have a direct and substantial effect on interstate commerce.  Keeping track of the

2   identities and whereabouts of sex offenders, in turn, can also be said to aid in monitoring or

3   regulating the production, sale, or distribution of pornography in interstate commerce.

4        Courts "must defer to a congressional finding that a regulated activity affects interstate

5   commerce "if there is any rational basis for such a finding," and "must ensure only that the means

6   selected by Congress are " 'reasonably adapted to the end permitted by the Constitution.' "

7   *Preseault v. I.C.C.,* 494 U.S. 1, 17 (1990).  Here, Congress intended to protect public safety.  It is

8   rational to conclude that maintaining a comprehensive national registry of sex offenders affects

9   interstate commerce.  For individuals engaging in any commerce-related activity, personal safety

10  and safety of their families is a prime concern.  Economic development in certain areas may be

11  encouraged or discouraged depending on the safety level.  Requiring sex offenders to register

12  within three days of a change in residence is a means reasonably adapted to achieving SORNA's

13  purpose.

14       Other courts faced with this constitutional challenge found no commerce clause violation.

15  "The ability to track sex offenders as they move from state to state, and continue to identify these

16  sex offenders in their new residences, is enough to fall under the veil of the Commerce Clause."

17  *U.S. v. Madera,* 474 F.Supp.2d 1257, 1265 (M.D. Fla. 2007); *see also U.S. v. Cardenas,* 2007 WL

18  4245913, *12 (S.D. Fla. 2007); *U.S. v. Howell,* 2007 WL 3302547, *18 (N.D. Iowa 2007) (noting

19  "[the defendant] acknowledges that to date, every court that has examined this issue has found no

20  violation of the Commerce Clause," the court found no constitutional defect).  Defendant does not

21  offer a single case where § 2250 was found unconstitutional on this ground.  The overwhelming

22  weight of authority supports the conclusion that the congressional authority was exercised

23  properly.

24       Defendant also argues that the statute is unconstitutional because it does not specify when

25  the travel must occur.  According to Defendant, an individual who traveled out of state ten years

26  before being required to register will also commit a crime under § 2250.  This situation is not easy

27  to imagine, considering that § 2250 starts out by defining the potential wrongdoer as an individual

28  who "is required to register under the Sex Offender Registration and Notification Act," is a sex

1  offender and travels in interstate commerce.  18 U.S.C. § 2250(a).  All three components of the

2  definition must be satisfied before charges may be brought.  The language of the statute does not

3  support the construction suggested by Defendant.

4  Accordingly, Congress enacted § 2250 within the authority provided by the Commerce

5  Clause.

6  **2.    Registration Requirements of SORNA**

7  Similarly, the registration requirements of SORNA are also constitutional under the

8  Commerce Clause as regulating persons in interstate commerce and having a substantial effect on

9  such commerce.  Section 2250 imposes a penalty for failure to register only on individuals

10  "required to register under the Sex Offender Registration and Notification Act."  18 U.S.C. §

11  2250(a)(1).

12  The analysis of the validity of the registration requirements under the Commerce Clause is

13  essentially identical to the analysis of § 2250 above.  As stated above, when regulating the total

14  incidence of a practice posing a threat to a national market, Congress may regulate the entire class.

15  *See Raich,* 545 U.S. at 17.

16  The registration provisions and § 2250 serve the same purpose of protecting the public

17  from sex offenders.  This purpose is achieved by tracking sex offenders as they move between the

18  states.  The registration requirements of SORNA do not create and impose federal criminal

19  penalties.  "Subtitle (B) of SORNA mandated that Title 18 be amended to create a new federal

20  crime for failure to register as a sex offender."  *Cardenas,* 2007 WL 4245913 at *12.  *Id.*  Section

21  2250 of Title 18 was necessary to create a "new federal failure to register crime," which imposes

22  penalties as the result of a defendant's travel in interstate commerce."  *Id.*  SORNA and § 2250 as

23  the intended statutory whole include the requisite nexus between the jurisdictional element of

24  travel in interstate commerce, and the offense of failing to register after having so traveled.

25  Separate construction of the registration requirements and § 2250 would render SORNA

26  meaningless.

27  Finally, the registration requirements give rise to penalties only in conjunction with § 2250:

28  Congress recognized that the limits of Commerce Clause authority would prevent the
registration requirements of the Walsh Act from applying to those convicted under state

law unless they also traveled in interstate commerce. This, in turn would hamper the goal of creating a comprehensive national registry of sex offenders. The Congress thus found it necessary and proper to include incentives that would encourage the states to pass cooperative legislation. As a result, the only registration requirements imposed on offenders who do not travel in interstate commerce are those required by state law.

*U.S. v. Pitts,* WL 3353423, *4-5 (M.D. La. 2007). Therefore the requirements in and of themselves do not violate the Commerce Clause.

As with § 2250, Defendant cites no case striking SORNA's registration requirements based on a commerce clause violation.

In sum, the registration requirements of SORNA are authorized by the commerce clause.

**B.    Applicability of § 2250 to Defendant's Conviction**

The statute applies to Defendant's conviction. The full text of § 2250 is as follows:

Whoever–

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

Passaro argues that the statute does not apply to his conviction because §2250(a)(2)(A) lists only convictions under "Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States." *Id.* Defendant was convicted under New Jersey state law.

The plain language of the statute, however, provides two alternative grounds for indictment in subsection (a)(2), as evidence by the connector "or." The first one is subsection (a)(2)(A). The second one is subsection (a)(2)(B), which applies to all interstate travel. Defendant was charged under subsection (a)(2)(B). Therefore Defendant has not shown that his indictment under § 2250 was improper.

07cr2308

1
2

**C.      Retroactivity of § 2250 and the *Ex Post Facto* Clause**

**1.      Retroactivity of § 2250**

3    Section 2250 is not retroactive.  "Retroactivity is not favored in the law.  Thus,

4  congressional enactments and administrative rules will not be construed to have retroactive effect

5  unless their language requires this result."  *Bowen v. Georgetown University Hosp.,* 488 U.S. 204,

6  208 (1988); *see also I.N.S. v. St. Cyr,* 533 U.S. 289, 316-17(2001) (citing *Lindh v. Murphy,* 521

7  U.S. 320, 328, n. 4 (1997)) ("[C]ases where this Court has found truly 'retroactive' effect

8  adequately authorized by statute have involved statutory language that was so clear that it could

9  sustain only one interpretation.").  "Even where some substantial justification for retroactive

10  rulemaking is presented, courts should be reluctant to find such authority absent an express

11  statutory grant."  *Bowen,* 488 U.S. at 208-09.

12    "The presumption against retroactive legislation is deeply rooted in our jurisprudence, and

13  embodies a legal doctrine centuries older than our Republic.  Elementary considerations of fairness

14  dictate that individuals should have an opportunity to know what the law is and to conform their

15  conduct accordingly; settled expectations should not be lightly disrupted."  *Landgraf v. USI Film*

16  *Products,* 511 U.S. 244, 265 (1994).

17    The district courts that have considered this issue before have not been uniform in their

18  decisions.  *U.S. v. Patterson,* 2007 WL 3376732, *1 (D.Neb. 2007) ("The magistrate [judge]

19  reviewed the law to date and determined that the district courts throughout the country have split

20  on this issue.  *See* Filing No. 26, p. 7 (citing nine district court cases finding the indictment should

21  be dismissed and nine district court cases concluding the indictment should not be dismissed")).

22    Section 2250 contains no language that could be interpreted as invoking retroactive

23  applicability.  Although SORNA includes some retroactive language, this language does not

24  amount to an express mandate "so clear that it could sustain only one interpretation."  *St. Cyr,* 533

25  U.S. at 316-17.  The only provision that mentions retroactivity is § 16913(d).  Moreover, the

26  potential retroactivity authorized by this provision is very limited.

27
28

The Attorney General shall have the authority to specify the applicability of the
requirements of this subchapter to sex offenders convicted before July 27, 2006 or its
implementation in a particular jurisdiction, and to prescribe rules for the registration of any
such sex offenders and for other categories of sex offenders who are unable to comply with

07cr2308

1    subsection (b) of this section.

2    *Id.* Subsection (b) of § 16913 addresses the initial registration of sex offenders:

3          The sex offender shall initially register--

4          (1) before completing a sentence of imprisonment with respect to the offense giving rise to
           the registration requirement; or

5
           (2) not later than 3 business days after being sentenced for that offense, if the sex offender
6          is not sentenced to a term of imprisonment.

7    *Id.* Thus any retroactive application is limited to instances determined by the Attorney General in

8    conformity with subsection (b).

9          Another district court has previously noted that "a plain reading of the statute shows that

10   Congress has only delegated authority to the Attorney General to issue a rule covering the limited

11   instance where a person who is classified as a sex offender under SORNA is unable to currently

12   register as such in a jurisdiction where he resides, works, or is a student." *U.S. v. Hinen,* 487

13   F.Supp.2d 747, 751-52 (W.D. Va. 2007). The same court gave examples of such inability: sex

14   crimes for which some states have traditionally not required registration; state-created exemptions

15   for certain offenders from registering depending on the dates of their convictions or remove their

16   names from the registry after a certain number of years of good behavior. *See id.* "Such persons

17   would have been unable to initially register because existing state registries do not provide a means

18   for them to do so." *Id.* Therefore the Attorney General was given the power to promulgate

19   regulations "under the most limited of circumstances." *Id.* at 752.[1] The retroactivity of SORNA is

20   explicitly confined to the initial registration of certain offenders as promulgated by the Attorney

21   General. Section 16913(d) is not sufficient as an express mandate required for retroactive

22   application.

23   _____

24          [1]The same court also noted:

25          It is likely Congress gave the Attorney General this authority under § 16913(d) to keep certain
            persons from being swept unnecessarily into the onerous requirements of the statute. For
26          example, under SORNA, an array of individuals may be considered sex offenders based on the
            nature of their state convictions. See 42 U.S.C. § 16911(5)(A)(i) (defining a "sex offense" as
27          "a criminal offense that has an element involving a sexual act or sexual contact with another.").

28   *Id.* at 752.

1   The government does not advance any argument against the finding that SORNA is not

2   retroactive.  The government focuses instead on whether § 2250, if retroactive, violates the *ex post*

3   *facto* clause.  The *ex post facto* argument is based on the Supreme Court decision in *Smith v. Doe,*

4   538 U.S. 84 (2003), where retroactivity was not disputed.  *See id.* at 90 ("The Alaska law, which is

5   our concern in this case, contains two components: a registration requirement and a notification

6   system.  Both are retroactive.").

7        Based on the above, SORNA, including § 2250, does not apply retroactively on its face.

8              **2.    *Ex Post Facto* Clause**

9        SORNA does not violate the *ex post facto* clause.  The *Ex Post Facto* Clause of the

10  Constitution provides that "[n]o Bill of Attainder or *ex post facto* law shall be passed."  U.S.

11  Const., art. I, § 9, cl. 3.

12          The heart of the Ex Post Facto Clause, U.S. Const., Art. I, § 9, bars application of a law
            "that changes the punishment, and inflicts a greater punishment, than the law annexed to
13          the crime, when committed ...."  To prevail on this sort of *ex post facto* claim, [defendant]
            must show both that the law he challenges operates retroactively (that it applies to conduct
14          completed before its enactment) and that it raises the penalty from whatever the law
            provided when he acted.
15

16  *Johnson v. U.S.* 529 U.S. 694, 699 (2000) (citations omitted).  As concluded above, SORNA does

17  not apply retroactively on its face.  In addition, SORNA does not extend to conduct completed

18  before the statute's enactment.

19       Section 2250 does not punish a defendant for the sex offense itself, but for the failure to

20  register as a sex offender following interstate travel.  *See, e.g., Cardenas,* 2007 WL 4245913 at 10;

21  *U.S. v. Wilson,* 2007 WL 3046290, *1 (D. Utah 2007) (indicating that the alleged SORNA offense

22  was moving to a different state and failing to register).  Travel and the subsequent failure to

23  register are acts that occur separately and independently from the sex offense.

24       Defendant asserts that the failure to register within three days of travel is not an indefinitely

25  continuing violation, but one that occurs precisely three days after travel.  *See Toussie v. U.S.,* 397

26  U.S. 112, 117 (1970) (finding that the violation of a draft law is "a single, instantaneous act to be

27  performed at a given time, and failure to register at that time was a completed criminal offense").

28  Even though Passaro may be right, the finite nature of his offenses does not justify dismissal of the

1    indictment.  Defendant does not dispute the allegations regarding his interstate travel following the

2    enactment of SORNA.

3         SORNA was enacted on July 27, 2006.  The government alleges as follows: on July 26,

4    2006, Defendant was arrested in New York for possession of a controlled substance and sentenced

5    to two days of community service.  On January 18, 2007, Defendant was arrested for trespass in

6    Las Vegas, Nevada.  In March 2007, Defendant was contacted by law enforcement officers in San

7    Diego, California on three separate occasions.  Therefore Defendant must have arrived in

8    California sometime after January 18, 2007.

9         On March 6, 2007, Defendant was contacted by the San Diego Harbor Police.  Officers ran

10   a check on Passaro's criminal record and discovered he was a convicted sex offender who had not

11   registered in California.  Defendant stated that he had been in San Diego for over a week, but was

12   not planning to stay.  The officers informed Defendant that he needed to register in California if he

13   had been there for more than five days under California Penal Code § 290.

14        On March 10, 2007, Defendant was issued a citation by the San Diego Police Department

15   for having an open alcohol container in a public park.

16        Defendant then traveled to Mexico and returned to California.  On March 23, 2007, he was

17   again contacted by the San Diego Harbor Police for the suspicion of having an open container.  The

18   officers ran a criminal record check on Passaro.  Defendant gave his name and stated that he had

19   been in San Diego for several weeks but was planning to leave once he had enough money for a

20   bus ticket.  Approximately a week after his release, Defendant traveled to Florida by commercial

21   service bus.  In July 2007, Defendant was apprehended in West Palm Beach, Florida.  He has not

22   registered in California to date.  The superseding indictment alleges that the offense occurred

23   between July 27, 2006 and July 24, 2007.

24        Cases cited by Defendant and finding an *ex post facto* violation are inapposite because the

25   indictments in these cases did not allege travel after the enactment of SORNA or after February 28,

26   2007, the date when the Attorney General clarified that SORNA applied to all sex offenders.  *See*

27   *U.S. v. Deese,* 2007 WL 2778362, *3 (W.D. Okla. 2007) ("The government's construction of the

28   statute is clearly retrospective since it seeks to capture travel that occurred prior to SORNA's

07cr2308

enactment."); *U.S. v. Stinson,* 507 F.Supp.2d 560, 569 n. 12 (S.D. W.Va. 2007) (noting that no travel after February 28, 2007 was alleged in the superseding indictment). Therefore the courts concluded that the defendants were charged with offenses which occurred before the statute was applicable to the defendants, which, of course, resulted in retroactive application and violates the *Ex Post Facto* Clause. Here, based on the chronology of Defendant's journeys alleged by the indictment, he is charged with offensive conduct that occurred after SORNA was passed and after the Attorney General's interim rule was promulgated.[2]

Because the indictment does not charge Defendant with conduct completed before the enactment of SORNA, there is no *ex post facto* violation shown.[3]

### 3.    Interim Rule of the Attorney General

On February 28, 2007, the Attorney General promulgated an interim rule pursuant to § 16913(d) of SORNA. Under the interim rule, "[t]he requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 72.3. Defendant claims that the rule purports to make section 2250(a) apply retroactively" and is invalid as promulgated absent notice and comment required by the Administrative Procedures Act ("APA"). *See* 5 U.S.C.§ 553.

First, Defendant's travel and failure to register after the enactment of SORNA make the retroactive effect of the interim rule immaterial. Second, the Attorney General properly invoked the good cause exception to the APA. "The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except – ... as otherwise provided by the agency for good cause found and published with the rule." 5 U.S.C. § 533(d)(3).

---

[2]As concluded below, however, SORNA applied to Passaro since the date it was enacted, before the interim rule of February 28, 2007.

[3]Because the Court finds that the alleged SORNA offense occurred after the Act's enactment, it does not reach the second element of the *ex post facto* test. Section 2250 imposes a penalty of up to ten years. 18 U.S.C. § 2250(a). Under the New Jersey law, failure to register is a high misdemeanor. *See* N.J.S. 2C:7-2(a)(3). Under the Wetterling Act, the penalty for the first offense was one year. 42 U.S.C. § 14072(i)(4). This Court makes no determination regarding whether the statutory scheme at issue is civil or criminal in nature and, in fact, increases the penalty from the one imposed at the time of the act. *See Smith v. Doe,* 538 U.S. 84 (2003).

07cr2308

1    The interim rule stated that its immediate effectiveness was necessary to eliminate any

2  possible uncertainty about the applicability of the Act's requirements and related means of

3  enforcement to sex offenders with convictions predating the enactment of SORNA. *See* 72 Fed.

4  Reg. 8894, 8896-8897 (2007). As evidenced by this and numerous other challenges to indictments

5  under § 2250 nationwide, clarity with respect to SORNA's requirements and applicability is

6  crucial, and any step to eliminate uncertainty is most welcome. The Attorney General acted

7  promptly for good cause. Therefore the challenge to the legitimacy of the interim rule fails.

8           **4.    Applicability of SORNA to Defendant prior to Interim Rule**

9    Defendant argues that SORNA did not apply to him before February 28, 2007, when the

10  Attorney General announced that SORNA's registration requirements apply to all sex offenders,

11  including sex offenders convicted of the offense for which registration is required prior to

12  SORNA's enactment. *See* 28 C.F.R. § 72.3.

13    Defendant bases his argument on § 16913(d):

14    The Attorney General shall have the authority to specify the applicability of the
      requirements of this subchapter to sex offenders convicted before July 27, 2006 or its
15    implementation in a particular jurisdiction, *and* to prescribe rules for the registration of any
      such sex offenders and for other categories of sex offenders who are unable to comply with
16    subsection (b) of this section.

17  *Id.* (emphasis added as urged by Defendant).

18    Subsection § 16193(b), entitled "Initial registration," states:

19    The sex offender shall initially register--

20    (1) before completing a sentence of imprisonment with respect to the offense giving rise to
      the registration requirement; or

21
22    (2) not later than 3 business days after being sentenced for that offense, if the sex offender
      is not sentenced to a term of imprisonment.

23  42 U.S.C. § 16913(b).

24    Passaro interprets these subsections as follows. Subsection 16913(d) contemplates two

25  groups of offenders: (1) those convicted prior to July 27, 2006, and (2) those unable to comply with

26  subsection (b). Passaro argues that prior to the interim rule of February 28, 2007, SORNA did not

27  apply to him because he was convicted before July 26, 2006. He does not claim inability to

28  comply with § 16913(b).

    Several district courts have held that the regulations promulgated by the Attorney General

                                    - 17 -                                    07cr2308

1  do not apply to defendants in Passaro's situation, that is, offenders who were convicted pre-

2  SORNA but whose ability to comply with § 16913(b) was not impaired:

3      Having carefully reviewed the parties' submissions, the Court finds that the regulations that
       defendant asserts have not been promulgated do not apply to defendant in this case. The
4      title of the subsection of SORNA which authorizes the Attorney General to specify the
       applicability of the requirements of SORNA to sex offenders convicted before July 27,
5      2006 and to prescribe rules for the registration of any such sex offenders is "Initial
       registration of sex offenders unable to comply with subsection (b) of this section." The
6      Court finds that this title clearly indicates that this subsection only applies to individuals
       who were unable to initially register as a sex offender. In the case at bar, defendant
7      registered initially in Arizona and faced no barrier to registering in Oklahoma upon
       becoming a resident. The Court, thus, finds that this subsection is not applicable to
8      defendant and that the Indictment, accordingly, should not be dismissed on this basis.

9  *U.S. v. Templeton,* 2007 WL 445481, *4 (W.D. Okla. 2007). The holding of *Templeton* was

10 followed by several district courts. *See, e.g., Hinen,* 487 F.Supp.2d at 750; *United States v.*

11 *Marcantonio*, 2007 WL 2230773 (W.D. Ark. 2007).

12     The bulk of the statute does not make a distinction between those convicted before the Act
       and those convicted after. It imposes its requirements on "sex offenders," without
13     qualification. The proper distinction for these purposes is between those who are currently
       registered, and those who are not. Those currently registered are unambiguously required by
14     subsections (a) and (c) to keep their registrations current. Those not currently registered
       must register in accordance with the "initial registration" provisions in subsection (b).
15     Subsection (d), as its title reveals, is very narrow in scope: only those currently unregistered
       offenders literally unable to comply with (b) because of the age of their convictions are
16     within the grey area which the Attorney General is authorized to illuminate by rule. In this
       subsection, Congress did distinguish between convictions from before and after the
17     enactment of the act. But it is clear from the context that their intent was not to exempt all
       sex offenders convicted before July 2006 from registration requirements, but rather to avoid
18     the obvious injustice of requiring such offenders to do the impossible by registering within
       3 days of their years-old convictions.
19
   *U.S. v. Roberts,* 2007 WL 2155750, *2 (W.D. Va. 2007).
20
       Other courts, however, disagreed. They found the language of § 16193 unambiguous. *See*
21
   *U.S. v. Muzio,* 2007 WL 2159462, *5 (E.D. Mo. 2007). Citing rules of statutory construction,
22
   namely that the title of a statute is given little weight and cannot limit the plain meaning of the text,
23
   these courts held that SORNA does not extend to convictions predating July 27, 2006. *See id.*
24
   (citations omitted).
25
       The words 'any such' and 'other categories' in the second clause indicate that § 113(d)
26     contemplates two groups of sex offenders: (1) past offenders and (2) those unable to
       initially register under subsection (b). Significantly, the first clause of § 113(d), which
27     addresses SORNA's applicability, only covers the first group: past offenders. Therefore,
       when the two clauses are read in conjunction, the first clause of § 113(d) unambiguously
28     provides the Attorney General with the authority to define the retrospective applicability of
       SORNA's registration requirements to past offenders.

1    *Id.* at 4; *see also Deese,* 2007 WL 2778362 at *2 ("A plain reading of the statute indicates that until

2    the Attorney General acted, the registration requirements of SORNA did not apply to persons

3    convicted before July 26, 2006.").

4          This Court adopts the reasoning of *Templeton.*  Although this approach appears to have

5    taken on several different meanings, this Court also relies on the plain meaning of § 16193(d).

6    Section 16913 sets forth the registration requirements for all sex offenders.  Subsection (b)

7    addresses the initial registration.  Subsection (d) addresses the initial registration of the offenders

8    unable to comply with subsection (b).  The Attorney General is given the authority to specify the

9    applicability of registration requirements to offenders with pre-SORNA conviction and to prescribe

10   the rules for the registration of any such offenders and "other categories of offenders unable to

11   comply with subsection (b)."  42 U.S.C. 16913(d).  Offenders with pre-SORNA convictions are

12   indicated as an example of a category of offenders unable to comply with subsection (b).  The

13   words "initial registration" appears both in the title of subsections (b) and (d).  Therefore it is plain

14   to this Court that the Attorney General only had to specify the applicability of the registration

15   requirements for offenders who were not able to register initially.

16         This interpretation is further supported by SORNA's purpose of creating a comprehensive

17   nationwide registry.  "Congress was concerned with the possibility that then-existing sex offenders

18   were slipping through the cracks of the disparate 50 state registration systems." *Roberts,* 2007 WL

19   2155750 at *2.  It is not conceivable that Congress, in its effort to protect the public from sex

20   offenders by creating a comprehensive nationwide registry, would have excluded a multitude of

21   such individuals with pre-dating convictions.  Accordingly, this Court finds that SORNA extended

22   to Defendant prior to February 28, 2007.  Accordingly, 42 U.S.C. 16913(d) does not apply to

23   Defendant.

24         In addition, even if Defendant is correct in his interpretation, the indictment includes

25   allegations of travel after February 28, 2007.  Therefore even assuming that SORNA did not apply

26   to Passaro before February 28, 2007, the indictment properly charges an offense under § 2250.

27         **D.    Non-Delegation Doctrine**

28         SORNA is not an impermissible delegation of congressional authority.  The authority to

     make law is entrusted to Congress.  U.S. Const. art. I, §§ 1, 8.  Congress generally cannot delegate

1   its legislative power to another branch.  *See Field v. Clark,* 143 U.S. 649, 692 (1892).  The non-

2   delegation doctrine, however, does not prevent Congress from "obtaining the assistance of its

3   coordinate branches."  *Mistretta v. U.S.,* 488 U.S. 361, 372 (1989).  Procuring such assistance is

4   "constitutionally sufficient if Congress clearly delineates the general policy, the public agency

5   which is to apply it, and the boundaries of this delegated authority."  *Id.* at 372-73 (citation

6   omitted).  The Supreme Court observed in 1989 that it had invoked the doctrine of unconstitutional

7   delegation to invalidate a law only twice in its history, both times in 1935.  *Id.* at 416.  At least two

8   district courts found that SORNA does not violate the non-delegation doctrine.  *See Hinen,* 487

9   F.Supp.2d 747; *Madera,* 474 F.Supp.2d 1257.

10        Defendant challenges two delegation clauses of SORNA.  Under § 16913(d),

11        The Attorney General shall have the authority to specify the applicability of the
          requirements of this subchapter to sex offenders convicted before July 27, 2006 or its
12        implementation in a particular jurisdiction, and to prescribe rules for the registration of any
          such sex offenders and for other categories of sex offenders who are unable to comply with
13        subsection (b) of this section.

14   *Id.*  Under § 16917(b), "[t]he Attorney General shall prescribe rules for the notification of sex

15   offenders who cannot be registered in accordance with subsection (a) of this section."  42 U.S.C. §

16   16917(b).

17        As discussed above in the portion of Order addressing the retroactive application of

18   SORNA, the authority given to the Attorney General is confined to a rather narrow set of

19   circumstances.  "[A] plain reading of the statute shows that Congress has only delegated authority

20   to the Attorney General to issue a rule covering the limited instance where a person who is

21   classified as a sex offender under SORNA is unable to currently register as such in a jurisdiction

22   where he resides, works, or is a student."  *Hinen,* 487 F.Supp.2d at 751-52.  The examples of such

23   inability are: sex crimes for which some states have traditionally not required registration; state-

24   created exemptions for certain offenders from registering depending on the dates of their

25   convictions or remove their names from the registry after a certain number of years of good

26   behavior.  *See id.*  Therefore the Attorney General was given the power to promulgate regulations

27   "under the most limited of circumstances."  *Id.* at 752.

28        Another district court characterized the role given to the Attorney General as merely

     advisory.  *See Madera,* 474 F.Supp.2d at 1261.  Because the test for whether a law should apply

                                          - 20 -                                    07cr2308

1    retroactively has been already set out by the Supreme Court, the Attorney General simply follows

2    this instruction in exercising his authority.  *Id.*  Therefore the Attorney General's power is limited.

3        This Court also does not find an improper delegation of authority.  Congress provided the

4    general policy in the statutory scheme of SORNA.  The office of the Attorney General is the

5    implementing agency.  Congress also detailed the Attorney General's authority, stating that it

6    included the specific determinations regarding the applicability to sex offenders convicted before a

7    certain date, in a particular jurisdiction, and establishing the rules for the registration or notification

8    of the sex offenders.  Congress merely secured the assistance of the Attorney General with the

9    implementation of the specifics of the law.

10        Accordingly, SORNA does not contain any impermissible delegation of authority.

11    **E.    Due Process**

12        SORNA does not violate due process.  The due process requirements safeguard the interests

13    in fundamental fairness through notice and fair warning, and the prevention of the arbitrary and

14    vindictive use of the laws.  *See Rogers v. Tennessee,* 532 U.S. 451, 460 (2001).  Defendant

15    advances two specific grounds for his due process challenge: that he had no notice of SORNA's

16    requirements and that it was impossible for him to comply with the registration requirement

17    because no state had implemented a registry pursuant to SORNA.

18        First, Defendant had sufficient notice of the registration requirements.  "Notice is required

19    before property interests are disturbed, before assessments are made, before penalties are

20    assessed."  *See Lambert v. People of the State of California,* 355 U.S. 225, 228 (1957).  The

21    Supreme Court noted that registration laws are common.  *Id.* at 243.  The highest court held a

22    registration law unconstitutional where a "[v]iolation of its provisions is unaccompanied by any

23    activity whatever, mere presence in the city being the test," and where the "circumstances which

24    might move one to inquire as to the necessity of registration are completely lacking."  *Id.* at 229.

25        Here, the government alleges Passaro was sufficiently familiar with his obligation to

26    register by the time he was charged.  The allegations are not disputed by Passaro.  On April 17,

27    2006, Passaro signed a fingerprint card marked "sex offender."  The card was part of the New

28    Jersey registration requirements and stated that Defendant was a sex offender who needed to

"advise/register [with] the local/State police when I change my registration address."  Also, on

- 21 -                                              07cr2308

March 6, 2007, the San Diego Harbor Police informed Defendant that he needed to register in

California if he had been there for more than five days under Cal. Penal Code § 290. Defendant

argues that he did not have notice of the specifics of SORNA's registration requirements, which

are different from, and "much stricter" than, for example, New Jersey's requirements. (Def.'s Mot.

to Dismiss at 42). Passaro does not, however, explain how these differences affected or impaired

his duty to register. Therefore Defendant has not shown that he was on insufficient notice.

Also, Defendant's notice argument amounts to citing his ignorance of the law as an excuse.

Districts courts who have considered this argument before rejected it:

> "[f]ew offenders have ever had relevant sections of the U.S.Code read to them before committing their crimes, yet they are expected to comply with it even so. Owners of firearms, doctors who prescribe narcotics, and purchasers of dyed diesel are all expected to keep themselves abreast of changes in the law which affect them, especially because such people are on notice that their activities are subject to regulation." ... Defendant's argument is unavailing to him, as it remains uncontested that the Defendant has a lifelong obligation to register as a sex offender.

*Cardenas,* 2007 WL 4245913 at 14; (citing *Roberts,* 2007 WL 2155750 at *2; *see also Howell,*

2007 WL 3302547 at *9 ("Sex offenders are no different; they must comply with the law even

when it changes suddenly and without notice, and they are well advised to periodically check for

changes because they are particularly subject to regulation.").

Second, the absence of a SORNA registry in California does not excuse Passaro from his

obligation to register. *U.S. v. Dalton,* 960 F.2d 121, 124 (10th Cir. 1992). SORNA requires states

to maintain a registry of sex offenders. *See* 42 U.S.C. 16912(a). The registries must be

implemented "before the later of (1) 3 years after July 27, 2006; and (2) 1 year after the date on

which the software described in section 16923 of this title is available," with the possibility of up

to two one-year extension granted by the Attorney General. 42 U.S.C. § 16924.

SORNA was enacted on July 27, 2006. Congress allowed the states at least until July 27,

2009, to establish SORNA-compliant registries. Currently, California requires sex offenders to

register under Cal. Penal Code § 290. Considering that Congress allowed the states at least three

years to set up the registries, it is doubtful that the legislature intended to suspend the registration

requirement in the meantime. Defendant does not explain why the existing sex offender registry in

California is insufficient under SORNA. He also does not dispute that he has never registered in

California. Accordingly, Defendant has not shown SORNA requires an act which is impossible to

1    perform.

2        **F.    Tenth Amendment**

3        The registration requirements are not unconstitutional under the Tenth Amendment.  Under

4    the Tenth Amendment, "[t]he powers not delegated to the United States by the Constitution, nor

5    prohibited by it to the States, are reserved to the States respectively, or to the people." *Cook v.*

6    *Gralike,* 531 U.S. 510, 519 (2001).  Criminal statutes are generally a matter of state law.  *See*

7    *Morrison,* 529 U.S. at 618.  States are encouraged to comply with SORNA's comprehensive

8    national program to avoid reduction in federal funding.  42 U.S.C. § 6925(d).  Failure to comply

9    with the conditions set forth in SORNA by a state or non-federal jurisdiction can result in a 10%

10   reduction in federal justice assistance.  *Id.*

11       SORNA does not violate the Tenth Amendment because Congress acted under its

12   enumerated powers when enacting this legislation.  The Supreme Court has upheld as

13   constitutional "any number of federal statutes enacted under the commerce power that pre-empt

14   particular exercises of state police power." *Hodel v. Virginia Surface Mining and Reclamation*

15   *Ass'n, Inc.,* 452 U.S. 264, 292 (1981).  The Ninth Circuit has held that "if Congress acts under one

16   of its enumerated powers, there can be no violation of the Tenth Amendment." *United States v.*

17   *Jones,* 231 F.3d 508, 515 (9th Cir. 2000).  As concluded above, SORNA is a legitimate exercise of

18   Congress's Commerce power.

19       Moreover, SORNA's registration requirements do not impose an additional burden.  "In

20   examining federal Acts for Tenth Amendment infirmity, the Court focuses on whether States and

21   state officials are commandeered to carry out federal regulatory schemes." *McConnell v. Federal*

22   *Election Com'n,* 540 U.S. 93, 101 (2003) (citation omitted).  District courts have found that

23   SORNA does not commandeer the states into implementing a federal statutory scheme.  *See, e.g.,*

24   *Pitts,* 2007 WL 3353423 at *9.  California, and most likely all other states, already have Megan's

25   Laws and sex offender registries in place.  SORNA only requires the registries be compliant with

26   uniform federal requirements and that sex offenders enter their information in these registries.

27   Based on the above, SORNA's registration requirements are constitutional under the Tenth

28   Amendment.

///

07cr2308

### G.    Right to Travel

SORNA does not violate the right to travel.  Although the right to travel is not expressly mentioned in the Constitution, it is derived from the Privileges and Immunities Clause of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment.  *Shapiro v. Thompson,* 394 U.S. 618, 631 (1969).  The right to travel includes the right to: 1) enter and leave another state; 2) be treated fairly when temporarily present in another state; and 3) be treated the same as other citizens of that state when moving there permanently.  *See Saenz v. Roe,* 526 U.S. 489, 499 (1990).  "State law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right."  *Attorney Gen. of N. Y. v. Soto-Lopez,* 476 U.S. 898, 903 (1986).

"In order to determine what level of scrutiny to employ to determine whether a residency requirement is constitutionally justified, the court must determine the extent to which the requirement impinges upon the right to travel."  *Walsh v. City and County of Honolulu,* 423 F.Supp.2d 1094, 1101 (D. Hawai'i 2006).  Where a state law unreasonably burdens the right to travel, strict scrutiny analysis applies.  *See Saenz,* 526 U.S. at 499.  Imposing a penalty on the exercise of the right to travel violate[s] the Equal Protection Clause 'unless shown to be necessary to promote a compelling governmental interest.'"  *Saenz,* 526 U.S. 499 (citation omitted).  Otherwise, a rational relationship test applies.  *See Walsh,* 423 F.Supp.2d at 1102.

Contrary to Defendant's argument, SORNA does not unreasonably burden sex offenders' right to travel.  Courts have repeatedly found sex offender registration statutes constitutional.  The Supreme Court upheld Alaska sex offender registration laws which allowed offenders "to move where they wish and to live and work as other citizens, with no supervision.  While registrants must inform the authorities after they change their facial features, borrow a car, or seek psychiatric treatment, they are not required to seek permission to do so."  *Smith v. Doe,* 538 U.S. 84, 87 (2003).  The highest court also upheld a Georgia statute enhancing the misdemeanor of child abandonment to a felony if a resident offender leaves the state after committing the offense, because "although a simple penalty for leaving a State is plainly impermissible, if departure aggravates the consequences of conduct that is otherwise punishable, the State may treat the entire sequence of events, from the initial offense to departure from the State, as more serious than its

1   separate components." *Jones v. Helms,* 452 U.S. 412, 422-23 (1981). An Iowa statute prohibiting

2   a sex offender from residing within 2,000 feet of a school was found constitutional because the

3   statute imposed no obstacle to a sex offender's entry into Iowa, allowed "free ingress and regress to

4   and from" Iowa for sex offenders, and thus does not "directly impair the exercise of the right to

5   free interstate movement." *Doe v. Miller,* 405 F.3d 700, 712 (8th Cir. 2005) (citing *Saenz,* 526

6   U.S. at 501)).[4]

7       Defendant argues that sex offenders who travel interstate are burdened by the more

8   exacting registration requirements of SORNA. SORNA's definition of a sex offense is more

9   inclusive. *See* 42 U.S.C. §§ 16911, 16913. Defendant, however, has not shown that these

10   requirements create an unreasonable burden. SORNA does not limit ingress or regress to and from

11   states or otherwise impair travel. Sex offenders traveling interstate are merely required to perform

12   a simple act of registering within a short period of time. Passaro claims that the burden would be

13   particularly high for him because he is indigent, homeless, may have mental health problems and is

14   easily detected by the law enforcement personnel. The registration requirement, however, does not

15   necessitate any expense, a permanent address or significant mental effort. The requirement is also

16   rationally related to the goal of protecting the public from sex offenders. *See* 42 U.S.C. § 16901.

17       Next, even assuming that SORNA does unreasonably burden the right to travel, the

18   legislation furthers a compelling governmental interest. Protection of the public from sex

19   offenders has been found to be a compelling interest sufficient to override the burden placed on sex

20   offenders by the registration requirements. *See Pitts,* 2007 WL 3353423 at *9. The availability of

21   state registries does not promote SORNA's goal of creating a comprehensive national registry.

22     **H.    Motion for Leave to File Further Motions**

23       The Government does not oppose this motion as long as the future motions are based upon

24   newly produced discovery responses. (Govt.'s Opp. to Def.'s Mot. to Dismiss at 24). Defendant

25

---

26       [4]Defendant cites an unpublished decision reversing a district court's dismissal of a habeas

27   petition because the petitioner "had tendered evidence that the revocation of his outpatient status may be used to place him in a category of higher-risk former offenders to whom more onerous community notification rules apply in certain states and thus that his constitutional right to travel has been

28   burdened." *Cavins v. Lockyer,* 232 Fed.Appx. 655, 657 (9th Cir. 2007). The unpublished decision is only persuasive authority. Also, the appellate court did not actually hold that petitioner's right to travel was burdened, but merely stated that there was evidence indicating a possible burden.

07cr2308

1   may file motions provided such motions are based on newly produced discovery responses.

2                                    **V. CONCLUSION**

3          Accordingly, Defendant's Motion to Dismiss the Indictment is **DENIED.**  Defendant's

4   Motion for Leave to File Further Motions is **GRANTED.**

5          **IT IS SO ORDERED.**

6

7   **DATED:  December 17, 2007**

8                                              _____

9                                              **Hon. Roger T. Benitez**
                                               **United States District Judge**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         - 26 -                                    07cr2308