```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------- x
UNITED STATES OF AMERICA,       :
                                :
       - against -              :         08-CR-67(LAP)
                                :
CLARENCE DEAN,                  :
                                :
                Defendant.      :
--------------------------------x
```

LORETTA A. PRESKA, SENIOR UNITED STATES DISTRICT JUDGE:

Before the Court is Defendant Clarence Dean's motion to dismiss the indictment charging him with traveling in interstate commerce and knowingly failing to update his sex offender registration, in violation of 18 U.S.C. section 2250.  (Dkt. no. 64.)  Defendant argues that the interim rule applying the Sex Offender Registration and Notification Act ("SORNA") to offenders who committed their sex offenses prior to the Act's passage, including him, is invalid.  He says this is because the Attorney General violated the Administrative Procedure Act ("APA") because he made the rule immediately effective without advance notice and time for comments. For the reasons set out below, the motion is denied.

**Statutory Background**

For decades, Congress has sought to "combat sex crimes and crimes against children through sex-offender registration schemes." Gundy v. United States, 139 S. Ct. 2116, 2121 (2019) (plurality op.). At first, Congress encouraged states to adopt

1

their own registration laws, and by 2006, every state had adopted such a law. Id. Those laws, however, "varied along many dimensions, and Congress came to realize that their 'loopholes and deficiencies' had allowed over 100,000 sex offenders (about 20% of the total) to escape registration." Id. (citing H.R. Rep. No. 109-218 pt. 1, at 20, 23-24, 26 (2005)).

In 2006, Congress passed SORNA, which replaced the "patchwork of federal and 50 individual state registration systems," Reynolds v. United States, 565 U.S. 432, 435 (2012), with a "comprehensive national system for the registration of" sex offenders, 34 U.S.C. § 20901. The Act "covers more sex offenders, and imposes more onerous registration requirements, than most states had before." Gundy, 139 S. Ct. at 2121. The Act also created a federal crime for traveling in interstate commerce and knowingly failing to register despite an obligation to do so. See 18 U.S.C. § 2250(a).

SORNA generally requires that offenders register before completing their sentence of imprisonment. See 34 U.S.C. § 20913(b). For "pre-Act" offenders -- offenders who were convicted before the enactment of SORNA -- the Act provided for the Attorney General to "specify the applicability" of SORNA to them and "prescribe rules for the[ir] registration." Id. § 20913(d).

Accordingly, in February 2007, the Attorney General promulgated an interim rule stating that SORNA "applies to all sex offenders . . . regardless of when they were convicted." Interim Rule, "Applicability of the Sex Offender Registration and Notification Act," 72 Fed. Reg. 8,894, 8,896 (Feb. 28, 2007) (codified at 28 C.F.R. § 72.3 (2007)) ("Interim Rule").[1] That decision was "of fundamental importance to the initial operation of SORNA, and to its practical scope for many years, since it determine[d] the applicability of SORNA's requirements to virtually the entire existing sex offender population." Id. at 8,896. As the Attorney General explained, if "SORNA were deemed inapplicable to sex offenders convicted prior to its enactment, then the resulting system for registration of sex offenders would be far from 'comprehensive,' and would not be effective in protecting the public . . . because most sex offenders who are being released into the community or are now at large would be outside of its scope for years to come." Id.

---

[1]    The Attorney General also took the view that SORNA itself had imposed registration requirements on pre-Act offenders. See Interim Rule, 72 Fed. Reg. at 8,896. He nonetheless promulgated the Interim Rule to "foreclos[e] any dispute" about the issue. Id. The Supreme Court subsequently held that SORNA's requirements applied only once the Attorney General specified that they did. Reynolds, 565 U.S. at 439.

3

The Attorney General also explained why he was proceeding by Interim Rule with immediate effect, followed by post-promulgation comments, rather than by proposing a rule and awaiting comments. He invoked the "good cause" exceptions of the APA, 5 U.S.C. § 553(b)(3)(B), (d)(3). Under that exception, a federal agency may issue a rule without notice and comment if it finds "good cause . . . that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B). Similarly, an agency may make a rule immediately effective, rather than providing for a thirty-day waiting period, if the agency finds "good cause." Id. § 553(d)(3). The burden of establishing good cause is on the agency, and the exception is applicable in "emergency situations, or where delay could result in serious harm." Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin., 894 F.3d 95, 113-14 (2d Cir. 2018).

In this instance, the Attorney General explained:

> The immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements -- and related means of enforcement, including criminal liability under 18 U.S.C. 2250 for sex offenders who knowingly fail to register as required -- to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the

4

>     imposition of criminal sanctions. The resulting
>     practical dangers include the commission of
>     additional sexual assaults and child sexual
>     abuse or exploitation offenses by sex offenders
>     that could have been prevented had local
>     authorities and the community been aware of
>     their presence, in addition to greater
>     difficulty in apprehending perpetrators who have
>     not been registered and tracked as provided by
>     SORNA. This would thwart the legislative
>     objective of "protect[ing] the public from sex
>     offenders and offenders against children" by
>     establishing "a comprehensive national system
>     for the registration of those offenders," SORNA
>     § 102, because a substantial class of sex
>     offenders could evade the Act's registration
>     requirements and enforcement mechanisms during
>     the pendency of a proposed rule and delay in the
>     effectiveness of a final rule. It would
>     accordingly be contrary to the public interest
>     to adopt this rule with the prior notice and
>     comment period normally required under 5 U.S.C.
>     553(b) or with the delayed effective date
>     normally required under 5 U.S.C. 553(d).

Interim Rule, 72 Fed. Reg. at 8,896-97.

In May 2007, the Attorney General proposed detailed guidelines for states implementing SORNA, which he finalized in July 2008. See Proposed Guidelines, The National Guidelines for Sex Offender Registration and Notification, 72 Fed. Reg. 30,210 (May 30, 2007); Final Guidelines, The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030 (July 2, 2008). As part of the Guidelines, the Attorney General again considered the application of SORNA to pre-Act offenders and restated that SORNA applies to those offenders. See Proposed Guidelines, 72 Fed. Reg. at 30,212-13, 30,228; Final Guidelines,

73 Fed. Reg. at 38,035-36, 38,063.  Last, in 2010, the Attorney General finalized the Interim Rule and reaffirmed his determination. See Final Rule, "Applicability of the Sex Offender Registration and Notification Act," 75 Fed. Reg. 81,849, 81,852-53 (Dec. 29, 2010).

**Factual Background**

In 1995, Clarence Dean was convicted of an attempted lewd act on a child and was sentenced to 37 months' imprisonment. (See Order at 5, dkt. no. 9.) Upon his release, he moved to Georgia and, eventually, to Alabama, where he registered as a sex offender. See Order at 5. In March 2007, Alabama police determined that Dean no longer lived at his registered address. See Order at 5. He was found in New York in August 2007, when he was arrested for murder after a woman's naked body was found wrapped in plastic under his hotel room bed. (See Order at 6, dkt. no. 9; Mem. of Law in Opp'n to the Def.'s Mot. to Dismiss the Indictment at 4, dkt. no. 8.)

On January 25, 2008, Dean was indicted for traveling in interstate commerce and knowingly failing to update his registration as required by SORNA. See 18 U.S.C. § 2250(a). Because his underlying sex offense occurred before the enactment of SORNA, Dean is a pre-Act offender. On June 10, 2008, Dean moved to dismiss the indictment on multiple grounds, including that SORNA's requirements exceeded Congress's powers under the

6

Commerce Clause and the Tenth Amendment. (See Mot. to Dismiss, dkt. no. 6.) The Court denied the motion in September 2008. (See Order at 1, dkt. no. 9.)

Dean's case was then delayed, primarily pending resolution of his New York state murder case. On April 17, 2017, Dean was convicted after a jury trial of murder, in violation of New York Penal Law Section 125.25 and was sentenced to twenty-five years to life imprisonment.

Following Dean's state murder conviction, Dean filed the instant motion. (Dkt. no. 64.) The motion seeks dismissal of the indictment because SORNA did not apply to Dean for two reasons: (1) the Attorney General's decision to issue the Interim Rule violated the APA, and (2) the SORNA regulations violated the nondelegation doctrine. This case was stayed while the Supreme Court considered the second argument in Gundy v. United States, No. 17-6068 (S. Ct.). The Supreme Court has now resolved that issue in favor of the Government, see Gundy, 139 S. Ct. at 2121.

Dean argues that the Interim Rule's promulgation violated the APA because it was made immediately effective without prior notice and comment. However, the Court finds the Attorney General validly invoked the good cause exception to the APA's procedural requirements.

7

**Discussion**

As the parties have made clear in their papers, the Court of Appeals has not yet resolved the issue of whether the Attorney General had good cause to excuse the APA's procedural requirements.  See United States v. Lott, 750 F.3d 214, 217 (2d Cir. 2014) (concluding that the Guidelines were validly promulgated without passing on the validity of the Interim Rule); see also United States v. Gundy, 803 F.3d 140, 143 (2d Cir. 2015.)  Fortunately, other circuits have spoken on the question; unfortunately, they are split.  Compare United States v. Dean, 604 F.3d 1275, 1279-82 (11th Cir. 2010) (finding good cause), United States v. Gould, 568 F.3d 459, 469-70 (4th Cir. 2009), and United States v. Dixon, 551 F.3d 578, 583 (7th Cir. 2008), rev'd on other grounds sub nom. Carr v. United States, 130 S. Ct. 2229 (2010), with United States v. Ross, 848 F.3d 1129, 1132-33 (D.C. Cir. 2017) (no good cause), United States v. Brewer, 766 F.3d 884, 887-890 (8th Cir. 2014), United States v. Reynolds, 710 F.3d 498, 509-14 (3d Cir. 2013), United States v. Johnson, 632 F.3d 912, 927-30 (5th Cir. 2011), United States v. Valverde, 628 F.3d 1159, 1166-69 (9th Cir. 2010), and United States v. Utesch, 596 F.3d 302, 308-10 (6th Cir. 2010).

The Court is in agreement with section IV of the Eleventh Circuit's opinion in Dean, 604 F.3d at 1278-82, where the Court found that the Attorney General had good cause

to bypass the notice and comment requirements of the APA to provide for the public safety.  While acknowledging that the good cause "exception should be 'narrowly construed and only reluctantly countenanced,'" id. at 1279 (quoting Jifry v. F.A.A., 370 F.3d 1174, 1179 (D.C. Cir. 2004)), the Court also noted that '[t]he exception is . . . 'an important safety valve to be used where delay would do real harm,'" id. (quoting United States Steel Corp. v. E.P.A., 595 F.2d 207, 214 (5th Cir. 1979)).  Thus, the Court went on to "conclude that the public safety argument advanced by the Attorney General is good cause for bypassing the notice and comment period." Id. at 1281.

    The Dean Court explained that:

> [r]etroactive application of the rule allowed the federal government to immediately start prosecuting sex offenders who failed to register in state registries. In practical terms, the retroactive rule reduced the risk of additional sexual assaults and sexual abuse by sex offenders by allowing federal authorities to apprehend and prosecute them.  The retroactive application of SORNA also removes a barrier to timely apprehension of sex offenders.

Id. at 1281 (citation omitted).  For the reasons articulated by the Eleventh Circuit in Dean, the Court agrees that the Interim Rule was properly promulgated.

    To the extent that Defendant argues that the seven-month delay before promulgation of the Interim Rule somehow disables the Attorney General from relying on the public safety

justification, the Court is not persuaded.  The question here is not about the few months BEFORE promulgation of the Interim Rule but whether saving the time that would have been expended in the notice and comment process is justified by the good cause exemption.  The Court finds that that time saving is so justified because "[d]elaying implementation of the regulation to accommodate notice and comment could reasonably be found to put the public safety at greater risk." <u>United States v. Gould</u>, 568 F.3d 459, 470 (4th Cir. 2009).

In light of the conclusion reached, the Court does not address the other arguments proffered by the parties.

**Conclusion**

For the reasons set out above, Defendant's motion to dismiss the indictment (dkt. no. 64) is denied.

The parties shall appear for a telephonic conference on June 30 at 10:00 a.m.  The dial-in for the conference is (888) 363-4734, access code 4645450.


SO ORDERED.

Dated:    New York, NY
          June 9, 2020


                                  _____
                                  Loretta A. Preska
                                  Senior United States District Judge